Goldie SATZ, Plaintiff,

v.

ITT FINANCIAL CORP., Defendant.

No. 78–630C(2).

United States District Court,
E. D. Missouri, E. D.

Jan. 25, 1979.

Francis H. Kennedy, Jr., St. Louis, Mo., for plaintiff.

Charles A. Seigel, St. Louis, Mo., for defendant.

## MEMORANDUM

WANGELIN, District Judge.

This matter is before the Court upon defendant's motion for summary judgment. This motion is more properly cognizable as a motion to dismiss for lack of subject matter jurisdiction, as per Rule 12(b)(1) of the Federal Rules of Civil Procedure, and will be considered as such by this Court.

■ Defendant contends that this Court is without jurisdiction to hear plaintiff's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5 et seq., since plaintiff did not file charges of employment discrimination with the Equal Employment Opportunity Commission (EEOC) within one hundred and eighty days (180) after the alleged discriminatory acts had taken place. Timely filing under 42 U.S.C. § 2000e–5(e) is a jurisdictional prerequisite to court action. *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 555 n. 4, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); *Greene v. Carter Carburetor Co.*, 532 F.2d 125 (8th Cir. 1976).

Plaintiff's charge of sex discrimination was filed with the EEOC on August 18, 1977. Plaintiff's complaint charges defendant with the discriminatory maintenance of predominately male supervisory personnel, discriminatory compensation in the form of wages and fringe benefits paid to male personnel, failing to fairly weigh qualifications of female personnel, and failing to afford females the same job opportunities forming the basis for advancement and increased pay.

On October 23, 1978, plaintiff's deposition was taken by defendant. With respect to the allegations of discrimination contained within her complaint, plaintiff testified as follows:

Q: Other than what you have testified to about Michel and Seaver, do you claim that you have been discriminated against with respect to promotion on account of your sex?

A: Yes, I do.

Q: What instances do you claim have been discriminatory on account of your sex with regard to promotion?

A: This is with Michel and Seaver?

Q: Excluding them.

A: No, I would say no.

Q: Excluding Michel and Seaver, again, do you feel that you have been discriminated against in opportunities for training?

A: No.

Q: Excluding those two individuals again, do you feel you have been discriminated against with respect to wages in any way?

A: No.

Q: Excluding Michel and Seaver again, do you feel you have been discriminated against with respect to fringe benefits?

A: No.

Q: Any other compensation or other benefits of employment, excluding those two individuals?

A: No.

Q: As I see it then, am I correct that your complaint against ITT in this instance is basically with regard to the company's treatment of Michel and Seaver as opposed to you; is that correct?

A: Yes.

Q: Any other thing that you have been discriminated against other than with regard to Michel and Seaver?

A: Would the fact—

MR. KENNEDY: Just try to answer his question.

A: I would say no.

(Note, throughout deposition, Michal spelled "Michel" and Seiver spelled "Seaver").

Plaintiff's allegations of continuing discrimination against other women employed by defendant are unsupported by plaintiff's own testimony. Further, plaintiff's deposition shows quite clearly that her allegations of discrimination relate only to defendant's failure to give her the position ultimately filled by Mr. Seiver, the position ultimately filled by Mr. Michal, or pay equal to that received by Mr. Michal. The record is devoid of evidence upon which plaintiff might rely to proceed on a disparate impact theory.

Mr. Seiver was hired on January 1, 1976, as a result of a change in company policies instituting a direct sales program. Prior to defendant's hiring of Mr. Seiver, plaintiff had been primarily responsible for defendant's "indirect" sale of commercial paper through a brokerage house, although plaintiff's decisions were subject to approval by her immediate superior. After Mr. Seiver was hired, defendant continued some indirect sales through the brokerage house as the program of direct sales became operative. Plaintiff concedes that "[t]oward the end of 1976" the broker sales of commercial paper was entirely terminated. During this period plaintiff was given additional responsibilities in other areas, and worked in the direct sale area of commercial paper when Mr. Seiver was away. Plaintiff did not, however, make any direct sales of commercial paper when Mr. Seiver was away from the office calling on customers.

Plaintiff was informed of the defendant's intention to go to direct sales of commercial

paper "late in 1975", and was informed that someone would be hired as a salesman. When plaintiff complained to Mr. Gerard in June of 1977 (at least 18 months after Mr. Seiver was hired) she stated that she should have been considered for Mr. Seiver's job. Plaintiff did not, however, apply for the position filled by Mr. Seiver.

Q: Did you ever tell anyone prior to Mr. Seaver coming on board that you desired to move into a different position?

A: No . . .

Q: Did you ever indicate to anyone that you desired the position that Mr. Seaver ultimately filled?

A: Yes . . . Mr. Appleman . . In 1977.

Normally, in the context of a discriminatory failure to promote or hire into an elevated position, the point in time at which the discriminatory act is said to occur, and thus when the one hundred and eighty (180) day period begins to run, is when the position in question is filled (and by logical extension when the promotion is de facto denied). *Egelston v. State University College at Genesco*, 535 F.2d 752, 755 (2nd Cir. 1976); *Gates v. Georgia-Pacific Corporation*, 492 F.2d 292, 294–295 (9th Cir. 1974).

Here, however, it is evident that plaintiff did not apply for the newly created position, nor did she even make her interest in that position known to her superiors until almost a year and a half had elapsed from the time the position was filled.

That fact alone casts extreme doubt on plaintiff's ability to make out a prima facie case. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Wright v. Stone Container Corporation*, 386 F.Supp. 890, 894 (E.D.Mo.1974), *aff'd* 524 F.2d 1058 (1975) (holding four-part individual job *applicant* test for establishing prima facie Title VII case the same for *promotion* cases).

Plaintiff contends that the delay in filing charges with the EEOC was occasioned by the gradual loss of her employment responsibilities, and her eventual recognition that Mr. Michal's and Mr. Seiver's jobs entailed more responsibilities than she had originally believed. It is only when she became fully apprised of the situation through hindsight, plaintiff argues, that the one hundred and eighty (180) day period began to run. This contention must be evaluated in light of plaintiff's testimony that: "I told him [Mr. Appleman] that I felt I had been mislead; that Mr. Seaver had been hired as a commercial paper salesman."

Q: In what way did you feel that you had been mislead?

A: I was told that Mr. Seaver was hired as a commercial paper salesman, that we would not be selling commercial paper entirely through a dealer; that we would sell commercial paper through a dealer and Mr. Seaver would sell commercial paper on a limited basis at the same time.

Q: *So your complaint was that they phased Goldman Sacks' operation completely out?*

A: No. My complaint was not that they phased Goldman Sacks out. *My complaint was that I was capable of handling that direct sale program . .*

Q: Were you informed of the company's intention to go to a direct sale of commercial paper?

A: Late in '75, yes.

Q: Were you informed that someone would be hired to fill that function?

A: Someone would be hired as a salesman, yes.

Plaintiff also argues that "[b]eing very busy and historically having been fairly treated in the past, she had no reason to suspect illegal actions." However, plaintiff in her deposition testified as follows:

Q: Now, can you tell me the date when you first felt that you were being discriminated against on account of your sex?

A: It wasn't on any date, it was kind of an evolvement.

Q: Well, when did you feel that you became discriminated against?

A: Many incidents occurred through the years, through the time, I would say, from the time of the merger [in 1974].

Q: You feel that the discrimination has been from the time since the time of the merger?

A: That's not since the time of the merger. However, as I go back and reflect, I feel that the undercurrent was there all the time.

Based upon the foregoing, this Court is of the opinion that the date on which the alleged discriminatory practice occurred as to plaintiff's complaints regarding the commercial paper salesman, was the date on which Mr. Seiver was hired. Based upon plaintiff's own testimony, this Court does not believe that equitable modifications should be applied to toll the one hundred and eighty (180) day period set out in 42 U.S.C. § 2000e–5(e). *See Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 928 (5th Cir. 1975); *Bickham v. Miller*, 584 F.2d 736 (5th Cir. 1978); *Antonopulos v. Aerojet-General Corp.*, 295 F.Supp. 1390, 1394 (E.D. Cal.1968).

Nor does the Court consider plaintiff's allegations of a policy of continuing discrimination to be in good faith in light of her prior position, outlined in her testimony supra, that her sole complaint against defendant was its failure to give her the position filled by Mr. Seiver, the position filled by Mr. Michal, or pay equal to that which Mr. Michal received. Further, in response to the question, "Do you claim that there are males that are compensated or given fringe benefits or other benefits of employment that females who are equally qualified do not receive?", plaintiff responded negatively. Also, in response to the question, "Any personal difficulties between you and any of the other management at ITT?", plaintiff responded, "No". No continuing policy or practice of discrimination is involved, but rather two isolated instances of hiring constitute the discrimination supported by any evidence.

With regard to plaintiff's complaints relating to the position ultimately filled by Mr. Michal, plaintiff testified as follows:

Q: Is it your contention in this lawsuit that you should have had the job given Mr. Michel?

A: I don't know what Mr. Michel's job was at the time of the merger.

Q: Would you answer my question?

A: Yes . . .

Q: Did you ever tell anyone that prior to the filing of this lawsuit or prior to your filing a charge with the Equal Employment Opportunity Commission that you desired Mr. Michel's job?

A: No.

Q: Did you ever tell anyone that you should have had his job?

A: No.

Q: Did you ever apply for the position that Mr. Michel ultimately filled?

A: No.

Q: Did you ever tell anyone prior to Mr. Michel coming on board that you desired to move into a different position?

A: No.

Plaintiff, in the Spring of 1977, told Mr. Appleman that (after both she and Mr. Michal had passed the SEC exam) "it was unfair that Mr. Michel had been given a promotion . . . and had been given many opportunities for advancement when I got none." Mr. Michal was hired in 1974, when ITT Aetna and ITT Thorpe merged. After the SEC exam in 1977, Mr. Michal was given the responsibility of ITT Thorpe in Minnesota. This is not, however, the basis of plaintiff's complaint.

Q: Did you feel that you should have been given the responsibility to manage the ITT Thorpe in Minnesota?

A: No.

Q: So what was your complaint with regard to Mr. Michel at the time you talked with Mr. Appleman in 1977?

A: I felt that I should have gotten some opportunity for some advancement in treasury as a result of that.

Q: As a result of passing the SEC exam?

A: Yes.

This testimony must be compared with the following:

Q: This is not anything to do with Mr. Michel's original coming to the company, is that correct?

A: It was at this time [after the SEC exam] I went back, and in my own mind . . .

Q: Is that in connection with your wanting his job when he originally came with the company?

A: I wanted equal pay.

Q: Perhaps I'm missing your point. You previously testified that your contention in this lawsuit is that you should have had Mr. Michel's job when he came with the company. Is that correct?

A: His job or equal pay.

■ Quite clearly this claim relates to events which took place in 1974, but which became known to plaintiff only in retrospect subsequent to the 1977 SEC exam. For the reasons previously set out in this opinion, the Court finds that the date on which the alleged discriminatory practice occurred as to plaintiff's complaints regarding the treatment of Mr. Michal by defendant as opposed to defendant's treatment of her, was the date on which Mr. Michal was hired.

■ Since plaintiff's claims relate to events transpiring more than one hundred and eighty (180) days prior to August 18, 1977, the date on which plaintiff filed her complaint with the EEOC, the case must be dismissed for want of jurisdiction under 42 U.S.C. § 2000e–5(e). *Olson v. Rembrandt Printing Co.*, 511 F.2d 1228 (8th Cir. 1974).