Goldie **SATZ**, Appellant,

v.

**ITT FINANCIAL CORPORATION,**
Appellee.

No. 79–1127.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 5, 1979.

Decided April 16, 1980.

Francis H. Kennedy, Jr., St. Louis, Mo., for appellant.

H. Kent Munson, St. Louis, Mo., for appellee.

Before LAY, Chief Judge,[*] and BRIGHT and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Appellant appeals from an order[1] of the district court for the Eastern District of Missouri dismissing her Title VII sex discrimination claim against her employer, ITT Financial Corporation, for lack of subject matter jurisdiction. We reverse.

## I.

### A. FACTS

In dismissing the complaint the district court considered appellant's deposition, an affidavit by appellant and the complaint. Those documents allege the following facts which are not at this time disputed by appellee.[2]

Appellant was employed by appellee or a predecessor corporation with steadily increasing responsibilities from 1964; by 1974 she was assistant treasurer with full responsibility for cash management and short term debt. At that time appellee sold all its short term indebtedness obligations or commercial paper[3] through a dealer. Appellant was responsible for determining cash needs of appellee's lending offices, helping decide whether to raise funds through sale of long term or short term obligations, making day-to-day changes in the interest rates appellant would offer on its commercial paper, keeping track of mat-uration and payment, handling the accounting of the outstanding debt obligations and supervising issuance and redemption of the paper through banks. She also participated in discussion with bankers as to the appellee's general financial condition and managed cash accounts and transfers of funds for appellee's operations generally.

In 1975, appellee replaced its treasurer; later that year, the new treasurer, Mr. Gerard, informed appellant that appellee would hire its own "inside" salesperson of commercial paper who would supplement the outside dealer sales. Appellant was also told that her job responsibilities would not change, and she continued to maintain accounting of all the commercial paper and for a time to handle interest rates while she trained the new inside salesperson, Mr. Seiver, after he was hired at the beginning of 1976.

Also, early in 1976, appellee changed the computer system used to aid in keeping track of commercial paper transactions. Unreliability of this new computer system made it necessary for appellant to keep track manually of appellee's commercial paper. An additional increase in her duties was caused by the growth in the number of banks (from 2 to 14) involved in appellee's commercial paper transactions. (In the spring of 1977, appellee installed a replacement computer system which was reliable and made possible once again mechanical organization of accounts.)

During the period from 1976 through early 1977, Seiver travelled frequently. In Seiver's absence, appellant assumed his responsibilities which did not involve actual sales. Therefore, during this period appellant continued to be quite busy, although increasing "inside sales" of commercial pa-

---

1. The district court order is reported at 464 F.Supp. 284.

2. Of course, we do not suggest that the allegations cannot be controverted at some future stage of the proceedings. Although we must take appellant's allegations as true for pur-poses of reviewing a dismissal of her claim, later it may be proven the facts are not as appellant alleges. *Travis v. Anthes Imperial, Ltd.*, 473 F.2d 515 (8th Cir. 1973).

3. Commercial paper is defined by appellant as any commercial debt with maturity less than one year.

per through Seiver gradually replaced sales through the outside dealer, until the dealer sales were discontinued in late 1976. Indeed, because appellant was overloaded with work, some of her duties attending to long term indebtedness accounts were transferred to Mr. Michal, another employee who had been hired in 1974.

During the early part of 1977, appellee's management gave serious consideration to a plan to sell intermediate term notes[4] to finance its operations. Appellant and Michal were asked to take a licensing or qualifying examination which would enable them to sell intermediate term notes.[5] Both took the examination and passed it. Subsequently, Michal received a promotion and pay increase. Appellant received no promotion.[6]

In June, 1977, she was told that she was no longer to assume Seiver's duties relating to commercial paper in his absence but that the duties would be assumed by his assistant. Appellant had begun to realize during the spring of 1977 that she was not advancing as rapidly as Seiver or Michal and that, contrary to what she had been told, expansion of Seiver's position had adversely affected her own. She had mentioned her concern to a supervisor in March, 1977. In July, 1977, she wrote a letter to appellee's treasurer suggesting that the difference in treatment between her and the two men was unfair and that she too was entitled to advancement opportunities. At about this time, appellee issued a revised job description for appellant's position that did not include her earlier duties involving commercial paper sales. She was told that she would have other duties including meetings with visiting bankers and travel, but little such opportunity has transpired.

**B.  EEOC CHARGE AND LAWSUIT**

Appellant filed an EEOC charge of discrimination under Title VII of the Civil Rights Acts of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, against appellee on August 18, 1977. She alleged discrimination on the basis of her sex in two regards: denial of equal pay in comparison to similarly situated male employees and denial of promotion or advancement in comparison to a male with less seniority and experience. She subsequently obtained notice from the EEOC of her right to file a Title VII lawsuit based on the charge and duly filed this action in federal district court. *See* 42 U.S.C. § 2000e–5. Her complaint alleged, in addition to the unequal pay and denial of promotion or advancement mentioned in the EEOC charge, that appellee

(c) fail[s] to give fair credit and weight to qualifications of plaintiff and other females when distributing duties, responsibilities, opportunities, and compensation, in the same respect as male employees are credited; and

(d) affords male employees but not plaintiff and other females job opportunities for experience and responsibilities leading to qualifying for, and forming the basis for, advancement, increased pay and fringe benefits and other favorable employment opportunities.

Thus, the complaint alleged discriminatory denial of training opportunities and assignment of job duties. A Title VII complainant may raise claims in court "like or related" to the substance of the complainant's charge before the EEOC. *See, e. g., Jenkins v. Blue Cross Mutual Hospital Insurance Co.*, 538 F.2d 164 (7th Cir.), *cert. de-*

---

**4.** The parties do not inform us of the dividing line between intermediate and long term indebtedness.

**5.** Although appellant terms the examination an "SEC exam," appellee claims she should call it an "N.A.S.D. Exam." We assume the parties are referring to the federal Securities and Exchange Commission and the National Association of Securities Dealers, respectively.

**6.** The district court, concluded, "This is not, however, the basis of plaintiff's complaint." 464 F.Supp. at 287. The court supported this conclusion by reference to appellant's statement at her deposition that she now has realized that appellee may have discriminated against her since 1974, after she thought about the allegedly disparate treatment during 1977. *Id.* at 288. We do not understand how allegations of disparate treatment in 1977 can prove that no disparate treatment occurred after 1974.

*nied,* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976); *EEOC v. Western Publishing Co.,* 502 F.2d 599, 603 (8th Cir. 1974); *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (5th Cir. 1970). In this case there is no dispute that the allegations of discrimination in training opportunities and job assignments are like and related to the substance of appellant's EEOC charge; therefore, all allegations in the complaint are properly before the court on the basis of appellant's single EEOC charge.

Appellee took appellant's deposition and subsequently filed a motion for summary judgment because the EEOC complaint was not filed within 180 days of the discriminatory act as required by 42 U.S.C. § 2000e–5(e). Appellee characterized as appellant's "sole complaint" the failure to hire appellant into positions which had been filled by male employees Seiver and Michal in 1976 and 1974. Appellant filed a response with an affidavit setting forth her version of the underlying facts. The district court treated the motion for summary judgment as a motion to dismiss for lack of subject matter jurisdiction because the filing of a timely charge with the EEOC is a prerequisite to invocation of federal court jurisdiction under Title VII. *See United Airlines v. Evans,* 431 U.S. 553, 555 n.4, 97 S.Ct. 1885, 1887 n.4, 52 L.Ed.2d 571 (1977); *Olson v. Rembrandt Printing Co.,* 511 F.2d 1228 (8th Cir. 1975) (en banc). The court accepted appellee's narrow characterization of the complaint and dismissed it as untimely.

■ As a preliminary matter, appellant argues that the district court should not have treated the motion for summary judgment as a motion to dismiss for lack of subject matter jurisdiction. Appellant seems to object to the district court's consideration of matters outside the complaint, including appellant's deposition and affidavit, on a motion to dismiss the complaint. The district court has discretion to determine how it will proceed on jurisdictional

questions, however, and it may consider materials outside the pleadings such as depositions or affidavits in determining whether the record demonstrates lack of subject matter jurisdiction.[7] *Land v. Dollar,* 330 U.S. 731, 735 & n.4, 67 S.Ct. 1009, 1010 & n.4, 91 L.Ed. 1209 (1947); *Miller v. Central Chinchilla Group, Inc.,* 494 F.2d 414 (8th Cir. 1974); *Zunamon v. Brown,* 418 F.2d 883 (8th Cir. 1969). *See Exchange National Bank v. Touche Ross & Co.,* 544 F.2d 1126, 1130–31 (2d Cir. 1976).

However, the district court should not have dismissed the complaint. "With respect to the motions to dismiss, the court must take all well pleaded allegations in the complaints as true, and will not dismiss the complaints unless it appears beyond a doubt that the plaintiffs cannot prove any facts in support of their claims which would entitle them to relief." *Joseph v. Norman's Health Club,* 336 F.Supp. 307, 311 (E.D.Mo.1971), *citing Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "We have reviewed the record in the light of the principle that all doubts on jurisdictional points must be resolved in favor of plenary trial rather than dismissal at the pretrial stage." *Miller v. Central Chinchilla Group, Inc., supra,* 494 F.2d at 417 (footnote omitted). We conclude that the court should not have adopted appellee's unduly narrow interpretation of appellant's claim and that the appellant's charge was not time barred.

### C. *DISPOSITION BELOW*

Appellee in its motion for summary judgment did not controvert appellant's allegations. Instead, appellee drew the court's attention to parts of appellant's deposition in order to demonstrate that appellant's charge of discrimination involved nothing more than a complaint that Michal and Seiver had been hired into desirable positions instead of her. As both men were hired more than 180 days before appellant

---

7. We fail to see how appellant could have been prejudiced by the form of the district court's proceeding, since appellant was given an opportunity to submit affidavits on the timeliness issue, just as under a summary judgment motion, and the court appears to have considered all the materials before it.

filed her EEOC charge, the district court concluded her charge was untimely.[8]

In doing so, the district court did not address the full substance of appellant's complaint. Appellee's attorney did elicit testimony from appellant to the effect that she now thinks she should be given Michal's or Seiver's job or equal pay. But nothing in this record suggests appellant retracted or waived any of her other allegations. *Cf. Moses v. Falstaff Brewing Corp.*, 525 F.2d 92, 94 (8th Cir. 1975); *Windsor v. Bethesda Hospital*, 523 F.2d 891, 894 (8th Cir. 1975). She continues to assert, for example, the allegation that in June, 1977, appellee's treasurer stripped her of her duties relating to commercial paper sales. She clearly complained that this reassignment of duties was discriminatorily based on sex and filed her charge of discrimination less than 180 days after the allegedly discriminatory act. Even if, as the district court suggested, the gist of appellant's complaint was that she wanted Seiver's job selling commercial paper, there remains the apparently timely allegation that appellee severed her connection with commercial paper sales within 180 days of her EEOC charge.[9]

Furthermore, we do not think appellant's deposition supports the court's characterization of this case as involving "two isolated instances of hiring" or "events which took place in 1974." 464 F.Supp. at 287–88. Appellant attempted to allege a continuing pattern of disparate treatment between appellant and certain male employees in regard to pay, training, opportunities for advancement and job assignments. "[I]t would appear that [appellant] was concerned not only with her failure to be promoted to [a specific position] but also with her overall upward mobility in the . . . organization." *Cedeck v. Hamiltonian Federal Savings & Loan Ass'n*, 551 F.2d 1136 (8th Cir. 1977). *See also Macklin v. Spector*

*Freight System, Inc.*, 478 F.2d 979, 988 (D.C.Cir. 1973). In this light we turn to the question of the timeliness of appellant's claims.

## II.

The complaint in this case alleges continuing unlawful employment practices. The allegedly discriminatory practices continued to a time within 180 days of the EEOC charge in August, 1977, and included specific changes in her duties within the 180-day time period which were part of this discriminatory treatment. Appellant alleges that within the 180-day period before her EEOC charge she requested, but was denied, advancement. Her allegations are indistinguishable from those found timely in *Cedeck v. Hamiltonian Federal Savings & Loan Ass'n, supra*, 551 F.2d at 1137. *See also Marquez v. Omaha District Sales Office*, 440 F.2d 1157 (8th Cir. 1971).

Moreover, appellant alleged that appellee continued until the time of her EEOC charge to pay her unequally because of her sex in comparison to similarly situated male employees. Such a discriminatory pay scale would also constitute an unlawful employment practice continuing into the 180-day limitation period. The practice of paying discriminatorily unequal pay occurs not only when an employer sets pay levels, but as long as the discriminatory differential continues. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 205–10, 94 S.Ct. 2223, 2233–2235, 41 L.Ed.2d 1 (1974) (Equal Pay Act). *Cf. Farris v. Board of Education*, 576 F.2d 765, 768 (8th Cir. 1978).

Appellant thus alleges a general pattern of discrimination which included specific discriminatory acts within 180 days prior to the filing of her EEOC charge.

---

8. The court also concluded that equitable considerations would not support "tolling" the 180-day period for filing a claim at some earlier date before August, 1977, when the charge was filed. *See* note 18 *infra*.

9. The court dismissed appellant's allegations of discrimination after 1976 as not in good faith,

but appellee has not made any claim of bad faith by appellant. Although in its answer to the complaint appellee generally denied appellant's allegations, appellee has at this point in the proceedings provided no evidence to controvert the sworn allegations in appellant's affidavit and deposition. *See* note 2 *supra*.

Her claim is therefore timely.[10] The legislative history of the 1972 amendments to Title VII clearly embodies a recognition that continuing violations may meet the 180-day limitation period. After the final version of the bill was drafted in a conference committee between the House of Representatives and the Senate, sponsors of the bill in both houses introduced into the record the same section-by-section analysis, which explained:

> [Title VII] as amended provides that charges be filed within 180 days of the alleged unlawful employment practice. Court decisions under the present law have shown an inclination to interpret this time limitation so as to give the aggrieved person the maximum benefit of the law; it is not intended that such court decisions should be in any way circumscribed by the extension of the time limitations in this subsection. Existing case law which [h]as determined that certain types of violations are continuing in nature, thereby measuring the running of the required time period from the last occurrence of the discrimination and not from the first occurrence is continued, and other interpretations of the courts maximizing the coverage of the law are not affected. It is intended by expanding the time period for filing charges in this subsection that aggrieved individuals, who frequently are untrained laymen and who are not always aware of the discrimination which is practiced against them, should be given a greater opportunity to prepare their charges and file their complaints and that existent but undiscovered acts of discrimination should not escape the effect of the law through a procedural oversight. Moreover, wide latitude should be given individuals in such cases to avoid any prejudice to their rights as a result of government inadvertence, delay or error.

118 Cong.Rec. 7167 (1972) (remarks of Sen. Williams); *id.* at 7165 (remarks of Rep. Perkins). As Congress changed the limitation period from 90 to 180 days in 1972, this legislative history is an important tool in interpreting the statute, for it explains the underpinnings of the legislative compromise which resulted in the lengthening of the limitation period. *See Moore v. Sunbeam, Inc.,* 459 F.2d 811, 820–21 (7th Cir. 1972). *Cf. Teamsters v. United States,* 431 U.S. 324, 354 n.39, 97 S.Ct. 1843, 1864 n.39, 52 L.Ed.2d 396 (1977) (less weight accorded to 1972 legislative history of Title VII in explaining provision enacted in 1964 and not changed in 1972).

■ As the Supreme Court has emphasized, "[t]he status of a current practice is at issue . . .. [T]he emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists." *United Airlines v. Evans, supra,* 431 U.S. at 558, 97 S.Ct. at 1889 (emphasis in original). "A continuously maintained illegal employment policy may be the subject of a valid complaint until a specified number of days after the *last occurrence* of an instance of that policy." *Acha v. Beame,* 570 F.2d 57, 65 (2d Cir. 1978) (emphasis in original). "[W]here . . . discrimination is not limited to isolated incidents but pervades a series or pattern of events which continue to within [180] days of the filing of the charge with the [EEOC], the filing is timely . . . regardless of when the first discriminatory incident occurred." *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 473 (D.C.Cir. 1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). Indeed, the allegation of a presently maintained policy of discrimination may state a claim under Title VII even if the last specific act pursuant to that policy occurred more than 180 days prior to the complaint. *Bethel v. Jendoco Construction Co.,* 570 F.2d 1168, 1174–75 (3d Cir. 1978). "Whether or not [appellant] can substantiate [her] assertions by proof remains to be seen. On this record, however, and at this

---

**10.** This kind of continuing pattern of discrimination has been recognized by commentators as the most obvious type of continuing violation of Title VII. *See generally* B. Schlei & P. Grossman, Employment Discrimination Law 884–908 (1976); *id.* at 227–34 (Supp.1979); Comment, 32 Ark.L.Rev. 381 (1978); Note, 63 Minn.L.Rev. 119 (1978).

stage in the proceeding, [she] may not be precluded from trying." *Id.* at 1175.[11]

### III.

▌ Because appellant is the prevailing party on this appeal, we reemphasize our determination that this case includes issues other than the allegedly discriminatory selection of a male for a position desired by appellant. The district court observed that appellant had not applied for Seiver's or Michal's job at the time the men were hired [12] and commented,

> That fact alone casts extreme doubt on plaintiff's ability to make out a prima facie case. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Wright v. Stone Container Corporation,* 386 F.Supp. 890, 894 (E.D.Mo.1974), *aff'd,* 524 F.2d 1058 (1975) (holding four-part individual

job *applicant* test for establishing prima facie Title VII case the same for *promotion* cases).

464 F.Supp. at 286 (emphasis in original). In our opinion, this analysis does not suffice in the present case because it does not fully address appellant's allegations of discrimination in assignment of job duties, training opportunities and pay; moreover, the managerial types of jobs involved in this case may require consideration of special factors. *See* discussion *infra.*

▌ As the district court noted, at this stage in the proceeding appellant has adopted a disparate treatment theory of the case and alleges at bottom that she was disfavored by appellee because of her sex. While the *McDonnell Douglas* case sets forth one approach to proving discriminatorily disparate treatment violative of Title VII,[13] that manner of proof "was not in-

---

**11.** Because we hold that appellant's claim was timely on a continuing violation theory, we have no need to rule on appellant's alternative claim that the limitation period under Title VII was "tolled" under equitable principles until appellant had reason to realize that discrimination may have been practiced against her. Such an equitable tolling approach has been adequate to support a decision on the merits in at least one Title VII case in this circuit, *Smith v. Rexall Drug Co.,* 415 F.Supp. 591 (E.D.Mo. 1976), *aff'd,* 548 F.2d 762 (8th Cir. 1977). But other cases of this circuit have suggested that the Title VII requirement for a charge to be filed within 180 days is "jurisdictional" and may not be subject to equitable considerations. *See Larson v. American Wheel & Brake, Inc.,* 610 F.2d 506, 511 (8th Cir. 1979). *Cf. Metromedia, Inc. v. NLRB,* 586 F.2d 1182, 1189 (8th Cir. 1978). Other circuits disagree on this issue. *Compare In re Consolidated Pretrial Proceedings in the Airline Cases,* 582 F.2d 1142 (7th Cir. 1978), *petition for cert. filed sub nom. Trans World Airlines, Inc. v. Zipes,* 442 U.S. 916, 99 S.Ct. 2834, 61 L.Ed.2d 282 (1979) *with Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F.2d 924 (5th Cir. 1975), *and Laffey v. Northwest Airlines, Inc., supra,* 567 F.2d at 474–5. Congress appears to have regarded the time period as a statute of limitations. *See, e. g.,* 110 Cong.Rec. 7212, 7213 (1964) (Memorandum of Sens. Clark and Case); S.Rep. 92–415, 92d Cong., 2d Sess. 36–37 (1972). *See generally* Jackson, C. & Matheson, J., *The Continuing Violation Theory and the Concept of Jurisdiction in Title VII Suits,* 67 Geo.L.J. 811, 841–50 (1979).

**12.** If appellant was deterred from seeking the positions in question by appellee's conduct, as she seems to allege, she could still challenge the selection process despite her failure to apply. *Cf. Teamsters v. United States, supra,* 431 U.S. at 367–71, 97 S.Ct. at 1870–72 (nonapplicants may be entitled to relief for class based discrimination in hiring).

**13.** Under *McDonnell Douglas* a prima facie case of discrimination is established where it is shown that a member of a protected group was qualified for a job, applied for the job and was rejected, and that the employer continued to entertain applications for the opening. *Id.,* 411 U.S. at 802, 93 S.Ct. at 1824. In a case of assignment of a particular job responsibility to a given employee, the *McDonnell Douglas* test would appear to apply to the employer's choice of which employee will assume the responsibility. Appellant alleges that she actually had certain responsibilities which appellee transferred from her to a male employee. Her allegations, if true, would constitute a *prima facie McDonnell Douglas* case, for the fact that she previously had job responsibilities relating to commercial paper and did not ask to relinquish those responsibilities would suffice as a *prima facie* showing that she was qualified for and sought the assignment but was passed over. The burden would then shift to appellee to articulate a legitimate, nondiscriminatory reason for the decision. *See Board of Trustees v. Sweeny,* 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978) (per curiam), *on remand,* 604 F.2d 106 (1st Cir. 1979), *cert. denied,* ── U.S. ──, 100 S.Ct. 733, 62 L.Ed.2d 731 (1980); *Kirby v.*

tended to be an inflexible rule." *Furnco Construction Co. v. Waters*, 438 U.S. 567, 575, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). The ultimate issue in a disparate treatment case under Title VII is whether the prohibited criterion—here, sex—was a *factor* in the challenged employment decision. *See McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 282 n.10, 96 S.Ct. 2574, 2579 n.10, 49 L.Ed.2d 493 (1976). For example, the issue of sex-based pay inequities simply does not fit under a *McDonnell Douglas* analytic framework. The question is rather whether appellant can prove as she alleges that she was paid less because of her sex than similarly situated males. *See Roesel v. Joliet Wrought Washer Co.*, 596 F.2d 183 (7th Cir. 1979); *Kyriazi v. Western Electric Co.*, 461 F.Supp. 894, 942–45 (D.N.J.1978). *Cf. Board of Regents v. Dawes*, 522 F.2d 380 (8th Cir. 1975), *cert. denied*, 424 U.S. 914, 96 S.Ct. 1112, 47 L.Ed.2d 318 (1976).

When considering cases of supervisory or managerial employees, courts have sometimes found it helpful to adopt an analytical framework focusing on discriminatory patterns and potential for stereotyping of employees on the basis of their sex or race. In this framework a case of disparate treatment may be proven where employment decisions are made by supervisors subjectively without definite standards for review, and the decisions result in a pattern clearly disfavoring minorities or females. *See Wells v. Meyer's Bakery*, 561 F.2d 1268 (8th Cir. 1977); *Rogers v. International Paper Co.*, 510 F.2d 1340, 1345 (8th Cir.), *vacated on other grounds*, 423 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29, *on remand*, 526 F.2d 722 (1975); *Rowe v. General Motors Corp.*, 457 F.2d 348 (5th Cir. 1972). *See generally* Note 73 Colum.L.Rev. 1614 (1973). Such an approach may prove helpful in this case, in view of appellant's allegation that appellee not only chose an employee for a vacant job but also to some extent tailored the job and promotional opportunities to individual em-

ployees by shifting duties between employees and reorganizing job responsibilities. An issue raised by appellant is whether sex was a factor in this process.

Accordingly, the judgment of the district court is reversed and remanded for further proceedings not inconsistent with this opinion.

BRIGHT, Circuit Judge, concurring:

This appeal presents us with a single issue: whether the appellant filed her EEOC charge within 180 days of the alleged Title VII violation.[1] The district court decided as a matter of law that she had not, basing that conclusion on portions of appellant's deposition testimony relating to the conduct of her employer in hiring Mr. Seiver in January 1976 and Mr. Michal in 1974. The complaint, however, alleged a continuing course of discriminatory conduct, including the denial of equal pay and equal opportunities for promotion. It is well settled that a course of conduct of repeated incidents of discrimination constitutes a continuing violation for the purpose of tolling the limitations period. *See, e. g., Clark v. Olinkraft, Inc.*, 556 F.2d 1219 (5th Cir. 1977), *cert. denied*, 434 U.S. 1069, 98 S.Ct. 1251, 55 L.Ed.2d 772 (1978).

The appellant's deposition is consistent with her complaint. The full deposition testimony of Ms. Satz indicates continual erosion of her responsibilities and less favorable treatment on the job as compared with Seiver and Michal. This continuing disparate treatment, according to Ms. Satz, culminated in the change in her job description in July 1977. She filed her EEOC charge shortly thereafter, on August 18, 1977—well within the 180-day limitation period.

I believe that, in light of the full record in this case, the district court erred in dismissing appellant's complaint for want of jurisdiction. Her deposition did not estab-

---

*Colony Furniture Co.*, 613 F.2d 696 (8th Cir. 1980), *reported at* 21 FEP Cases (BNA) 1179.

1. The appellant also urges that the complaint be reinstated on the basis of equitable tolling principles. Our disposition of the case makes it unnecessary for us to reach that question.

lish conclusively that Ms. Satz's charges related solely to the initial hiring of Seiver and Michal. This conclusion resolves the case fully upon the issues presented by the briefs and oral arguments of the parties. I think it is premature to reach the issues discussed in part III of the majority opinion. Accordingly, I join in the result reached by the majority but limit my concurrence to parts I and II of the opinion.