Elizabeth Anderson HISHON, Plaintiff-Appellant,

v.

KING & SPALDING, a Partnership, Defendant-Appellee.

No. 80–9021.

United States Court of Appeals, Eleventh Circuit.

June 17, 1982.

Rehearing and Rehearing En Banc Denied Sept. 9, 1982.

---

Emmet J. Bondurant, II, Atlanta, Ga., for plaintiff-appellant.

Judy Trent Ellis, E. E. O. C., Washington, D. C., for amicus curiae.

Lokey & Bowden, Hamilton Lokey, Gerald F. Handley, Atlanta, Ga., for defendant-appellee.

Before TJOFLAT and FAY, Circuit Judges, and YOUNG *, District Judge.

FAY, Circuit Judge:

A voluntary association of two or more persons established for the purpose of engaging in a common enterprise has traditionally been known as a partnership. It is from within this framework this Court now confronts a novel question of jurisdiction under Title VII. Elizabeth Anderson Hishon filed a Title VII action against King & Spalding, a law firm, alleging that it discriminated against her on the basis of sex in its refusal to invite her into its partnership. After considering lengthy and detailed memoranda, Judge Newell Edenfield of the Northern District of Georgia, held Title VII inapplicable to partnership decisions, leaving the District Court without subject matter jurisdiction of the claim. Judge Edenfield dismissed the case under Fed.R.Civ.P. 12(b)(1).[1] The plaintiff appeals the District Court's ruling and provides us with a myriad of creative reasons why the particular partnership in issue here should be subject to the protection afforded "employees" by Title VII. While the arguments are appealing and discrimination in any form must not be tolerated, we cannot overlook the essence of a partnership—voluntary association. We are therefore compelled to reject the corporate characterizations of King & Spalding set forth by the plaintiff, and hold that Title VII does not apply to decisions

regarding partnership. We affirm the District Court's dismissal.

In 1972, Elizabeth Hishon accepted a position as an associate with King & Spalding. King & Spalding is a large Atlanta law firm which operates as a general partnership. The partnership consists of approximately fifty active lawyers and employs approximately fifty additional lawyers as associates. At the time the plaintiff became an associate with the firm, consideration for partnership occurred at the end of an associate's sixth year. The firm also maintained an "up or out" policy. Under this policy, if the partnership did not invite an associate to become a partner after the requisite time, the associate was allowed to remain with the firm only for such reasonable period as necessary to secure other employment.

In May, 1978, the partnership considered Ms. Hishon, along with other associates hired at the same time, and decided not to invite her to join the partnership.[2] She was promptly notified, and was extended the normal period of time to secure other employment. Eight months later, Ms. Hishon requested reconsideration for partnership. At the conclusion of the May, 1979, partnership meeting, the result was the same—Ms. Hishon was not invited into the partnership.[3] Again the partnership notified her of the outcome. Ms. Hishon left the firm on December 31, 1979.

Prior to her departure from the firm, Ms. Hishon filed a sex discrimination claim with

---

* Honorable George C. Young, U. S. District Judge for the Middle District of Florida, sitting by designation.

1. In rendering his decision, the trial judge additionally dealt with the plaintiff's motion to compel discovery. In view of his decision to dismiss the case, the request for further discovery was denied.

2. It is significant to note that the partnership made the same decision with respect to two male associates, while other male associates within the group were invited to join the partnership.

3. The parties vigorously dispute the nature of the May, 1979, decision. King & Spalding

claims the partnership voted not to reconsider Ms. Hishon for partnership and that the decision not to invite her was made in 1978. Ms. Hishon claims, however, that King & Spalding reconsidered and revoted on the partnership issue at its May, 1979, meeting. In its motion to dismiss, King & Spalding argued that since the partnership decision had been made in May, 1978, Ms. Hishon had exceeded the 180-day filing deadline for employment discrimination suits. 42 U.S.C. § 2000e–5(e) (1976); *Bickham v. Miller*, 584 F.2d 736 (5th Cir. 1978). Because we find Title VII inapplicable, the argument no longer retains its vitality and the disputed issue is of little consequence.

the Equal Employment Opportunity Commission. Within ten days the Commission issued a Notice of Right to Sue, and Ms. Hishon filed her complaint in District Court within the statutory 90-day period.

■ The complaint contained three counts. The first count, the only one considered by the District Court, alleged sex discrimination in the firm's decision not to make her a partner.[4] Count two alleged a violation of the Equal Pay Act, and count three alleged breach of contract.[5]

Due to the particularly sensitive nature of the discovery (the contents of the firm's partnership agreement) and the unique legal issue presented in count one, the parties and the District Court mutually agreed to limit initial discovery to information needed to determine the jurisdictional issue of Title VII. King & Spalding supplied an edited version of its partnership agreement in compliance with discovery requests as well as answers and objections to numerous interrogatories. All of this information and the briefs for this appeal were placed under seal to avoid any unnecessary disclosure.[6] In ruling on King & Spalding's motion to dismiss, the District Court also ruled against the plaintiff's request for additional

4. The complaint contained numerous instances of alleged sex discrimination within the plaintiff's seven and one half years of association with the firm. During oral argument the panel questioned whether the plaintiff intended to pursue individual claims of discrimination under Title VII regardless of the outcome of this appeal. Subsequent correspondence from plaintiff's counsel relieves this Court of its initial concern.

In a letter dated January 18, 1982, counsel for King & Spalding informed this Court that all parties had expressly agreed with the District Court to limit its ruling to the threshold jurisdictional issue now presented on appeal. The suggestion, in fact, had been made originally by Ms. Hishon's counsel in an earlier letter:

If King & Spalding were to prevail on this threshold question, discovery on the merits aimed at establishing that it has in fact discriminated against women and other minorities in its employment, promotion and compensation decisions, as well as discovery into matters of partner compensation for the purpose of establishing damages under Title VII, would be moot.

Letter from Emmet J. Bondurant to Judge Newell Edenfield (March 31, 1980); Record at 82–84.

A subsequent letter from Ms. Hishon's counsel, dated January 25, 1982, confirms the limited area of inquiry and the plaintiff's intention to focus on the partnership question alone.

Appellant did not intend to assert separate claims based on each individual episode of sex discrimination practiced against her as an employee that is alleged in the complaint. If the case is reversed and remanded for trial under one or more of the three legal theories referred to above, plaintiff does intend, however, to prove the acts of discrimination practiced against her as an associate as evidence of the existence of a continuing pattern and practice of discrimination on the part of King & Spalding, as evidence that she had diminished opportunities to demonstrate that she

was partnership material as compared to her male counterparts who were more favorably treated, and as evidence that King & Spalding's ultimate decision to deny her admission to partnership was based on sex and not a legitimate evaluation of her professional capabilities.

If the Court should conclude (contrary to appellant's arguments) that Title VII does not apply to the three "partnership" claims asserted by plaintiff under any of the three legal theories which she has advanced, *plaintiff does not desire a remand of the court below in order to afford plaintiff an opportunity to try any other Title VII claims based on individual episodes of sex discrimination that may have been practiced against her while she was an associate of King & Spalding.* Letter from Emmet J. Bondurant to Judges Tjoflat, Fay and Young (January 25, 1982) (emphasis supplied). In light of this correspondence, we find no jurisdictional barrier to our rendering a decision on the Title VII count limited solely to partnership decisions.

5. We do not find any additional obstacle posed by the original existence of two other counts. According to the plaintiff's brief; "Counts Two and Three of the complaint, which alleged violations of the Equal Pay Act, 29 U.S.C. § 206(d)(1), and a contract claim, have been informally withdrawn and dismissed by plaintiff without prejudice." Brief for Appellant at 2 n.1. *See also* Letter from Hamilton Lokey to Judges Tjoflat, Fay and Young (January 18, 1982) and Letter from Emmet J. Bondurant to Judges Tjoflat, Fay and Young (January 25, 1982).

6. The Equal Employment Opportunity Commission participated as amicus curiae in the District Court and submitted an amicus brief supporting the appellant's position in this appeal. At one point the Commission had requested access to all discovery. The District Court denied its request.

discovery. Amidst the three-count complaint, sensitive discovery, the unique legal issue posed, and the professional courtesy extended by all involved, this Court is confronted with but a single narrow issue: whether Title VII applies to a law firm's decisions regarding its partners?

■ A dismissal under Fed.R.Civ.P. 12(b)(1) is proper only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim, which would entitle [her] to relief." *McLain v. Real Estate Board of New Orleans, Inc.*, 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Appellant suggests that Title VII must be given the "broadest possible interpretation" in order to effectuate its purpose—to remedy acts of discrimination within the employment context. *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1971), *cert. denied*, 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972). Under such a broad reading and in conjunction with her altered characterizations of King & Spalding, she hopes to persuade us of Title VII's application to partnership decisions. Even under the most liberal reading we cannot find the requisite congressional intent to permit Title VII's intervention into matters of voluntary association. We can conceive no set of facts which would entitle her to relief under Title VII with respect to partnership decisions. This renders the dismissal of her claim proper.

Appellant proposes three bases upon which to find jurisdiction under Title VII: (1) partners at King & Spalding are equivalent to "employees" of a corporation thereby establishing the employment context for Title VII's application; (2) elevation to partnership is an "employment opportunity" or a "term, condition or privilege of employment" protected by Title VII; and (3) termination of employment as a result of failure to make partner falls within the ambit of an unlawful discharge prohibited by Title VII. Despite the alluring quality of her arguments, we are unpersuaded. An examination of her attempts to recharacterize the law firm partnership as a corporation reveals their transparent nature.

*Partnership or Corporation?*

■ The appellant argues the size and complexion of King & Spalding's partnership is more akin to a corporation possessing a separate and distinct identity and that its partners are more like employees than owners.[7] We are well aware that large law partnerships possess many attributes common to corporate forms of business. As appellant correctly points out, the United States Supreme Court has held that partnerships have "an established institutional identity independent of its individual partners." *Bellis v. United States*, 417 U.S. 85, 95, 94 S.Ct. 2179, 2187, 40 L.Ed.2d 678 (1974) (individual partner's fifth amendment privilege held inapplicable to prevent production of partnership records). For many purposes, such as the fifth amendment's protection, this "separate identity" will yield results similar to those for corporations, but not for Title VII purposes.

Next the appellant contends that because King & Spalding has a written partnership agreement, the firm has expressly altered its existence from a traditional common law partnership to the skeletal structure of a corporation. This argument is another attempt to equate partners of a large firm with employees of a corporation. We have reviewed the appellant's list of alleged alterations and find they do nothing more than clarify the internal structure of the firm. Under Georgia law "[a] partnership may be created either by written or parol contract." Ga.Code Ann. § 75–101 (1981). King & Spalding has reduced its partnership structure to writing; there is no merit to the contention that in doing so, it has unbeknownst to itself incorporated its partnership.

---

7. Under appellant's theory, if it can be shown that partners are employees of the partnership rather than owners, an employment relationship exists rendering Title VII applicable to partnership decisions since the decision would then be relegated to nothing more than a simple promotion.

Additionally, the appellant points out that the United States Supreme Court and the former Fifth Circuit [8] have held that part ownership of a business does not preclude a person's classification as an employee subject to federal employment legislation. *Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961); *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211 (5th Cir.), *rehearing en banc denied*, 494 F.2d 1296 (5th Cir. 1974). It would be unrealistic to assume a person cannot maintain a proprietary interest and simultaneously work in the business. Mutual exclusivity neither exists nor is required in a law firm in order for the firm to maintain its desired partnership structure. This lack of exclusivity, however, does not render the term "partner" equivalent to the term "employee" for purposes of Title VII.

*Partner or Employee?*

■ The status of "an employee under Title VII is a question of federal … law; it is to be ascertained through consideration of the statutory language of the Act, its legislative history, existing federal case law, and the particular circumstances of the case at hand." *Calderon v. Martin County*, 639 F.2d 271, 272–73 (5th Cir. 1981). Neither the statutory language nor the legislative history of Title VII greatly illuminate this otherwise gray area. First, Title VII merely defines an employee as "an individual employed by an employer." 42 U.S.C.

§ 2000e(f) (1976). Second, the legislative history reveals but a single remark. During the Senate Debate Senator Clark stated that the term "employer" was "intended to have its common dictionary meaning, except as expressly qualified by the Act." [9] 110 Cong.Rec. 7216 (Apr. 8, 1964).

Third, existing federal case law includes analysis under the "economic realities" test, traditional agency and partnership principles, and the four-part test set forth in *Calderon.* [10] *See, e.g., Lutcher v. Musicians Union Local 47*, 633 F.2d 880 (9th Cir. 1980) (Title VII); *Spirides v. Reinhardt*, 613 F.2d 826 (D.C.Cir.1979) (Title VII); *Burke v. Friedman*, 556 F.2d 867 (7th Cir. 1977) (Title VII); *Donovan v. Tehco, Inc.*, 642 F.2d 141 (5th Cir. 1981) (Fair Labor Standards Act).

The Seventh Circuit provides a most enlightening discussion of whether Title VII applies to an accounting firm operating as a partnership in *Burke v. Friedman.* Citing Fifth Circuit precedent in recognition that "Title VII's definition of "employee" is not restrictive,'" the court applied traditional partnership principles and held that partners were not employees. *Id.* at 869 (quoting *McClure v. Salvation Army*, 460 F.2d 553 (5th Cir.), *cert. denied*, 409 U.S. 896, 93 S.Ct. 132, 34 L.Ed.2d 153 (1972)). In *Burke*, a female employee filed a sex discrimination action for wrongful discharge. Without counting the accounting firm's partners as employees, the partnership did not qualify as an "employer" since it employed less

**8.** The Eleventh Circuit sitting en banc adopted the law of the Fifth Circuit as it existed on September 30, 1981 in *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

**9.** The appellant urges this Court to adopt an "economic reality" test for determining whether the partners at King & Spalding are "employees." The test is derived from the United States Supreme Court's decision in *NLRB v. Hearst Publications Co.*, 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944), in which the Court applied the term "employee" as found within the National Labor Relations Act. The Court defined the term according to "the purpose of the Act and the facts involved in the economic relationship." *Id.* at 129, 64 S.Ct. at 859. The former Fifth Circuit recently employed this test in deciding whether an individual was an "employee" for purposes of the Fair Labor Stan-

dards Act. *Donovan v. Tehco, Inc.*, 642 F.2d 141 (5th Cir. 1981). Other courts have considered this approach under Title VII. The appellee, however, contends the term should be given its common dictionary meaning as suggested by Senator Clark in reference to the term employer. We find the *Calderon* test provides a more comprehensive standard by evaluating all relevant criteria.

**10.** We are aware that *Calderon* dealt with the classification of "employee" for purposes of establishing whether the plaintiff qualified in order to maintain an action under Title VII, whereas we are faced with whether the individual members of the defendant partnership may be considered employees. Each question is jurisdictional in origin, however, and we find *Calderon's* test especially appropriate.

than fifteen "employees." While the precise issue varies from the issue before us, the Seventh Circuit has announced its hesitation to equate partners with employees. We have the same reluctance.

■ Fourth, the particular circumstances of this case are clear. King & Spalding operates as a partnership under the laws of Georgia. It files tax returns as a partnership. It is comprised of fifty active partners and employs approximately fifty associates along with other support personnel. It has a lengthy partnership agreement with detailed provisions as to profits, losses, withdrawal, dissolution, etc. But it is clearly a voluntary association of lawyers for the purpose of practicing law as joint venturers. The partnership is the appellant's employer; the partners own the partnership; they are not its "employees" under Title VII.

We find a clear distinction between employees of a corporation and partners of a law firm. In making this distinction, we do not presume to exalt form over substance. In this instance, however, the form *is* the substance, and we are unwilling to dictate partnership decisions under the guise of employee promotions protected by Title VII. The very essence of a partnership is the voluntary joinder of all partners with each other.

*"But You Promised"*

■ Appellant's second point concerns King & Spalding's alleged representations to her that in return for satisfactory work as an associate for a designated number of years, an invitation to partnership would be forthcoming. She asserts this "promise" is a "term, condition or privilege of employment" protected by section 703(a)(1) and/or

an "employment opportunity" protected by section 703(a)(2).[11] She suggests that as an associate/employee, she was "entitled" to the "promotion" to partnership upon satisfactory fulfillment of her duties and denial of partnership is a denial of an "employment opportunity." Relying on *Golden State Bottling Co., Inc. v. NLRB*, 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973) and *NLRB v. Bell Aircraft Corp.*, 206 F.2d 235 (2d Cir. 1953), she advises us that should we decline to equate partners with employees, we may still find the "opportunity" for promotion within the statute's purview.

We have no quarrel with the premise that an "opportunity" can include promotion to a position beyond that of an "employee" covered by Title VII. But, once again, we decline to extend the meaning of "employment opportunities" beyond its intended context by encroaching upon individuals' decisions to voluntarily associate in a business partnership.

In *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211 (5th Cir.), *rehearing en banc denied*, 494 F.2d 1296 (5th Cir. 1974), the former Fifth Circuit held that election to a Board of Operatives had been appropriately labeled by the District Court as "a valuable term, condition, or privilege of employment." The case is unique, however, due to the manufacturing company's organizational structure. The company's owner had devised an unusual management plan which set up a Board of Management and a Board of Operatives. The Board of Operatives served as a conduit between the employees and the management board. Employees working in nonsupervisory positions were eligible for election to the Board of Operatives. Upon his death the owner bequeathed all outstanding common stock to

---

**11.** 42 U.S.C. § 2000e–2(a)(1) & (2) (1976) provide:

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

For our purposes, we will simply refer to both sections as covering "employment opportunities."

the boards as trustees for the employees. Prior to the case, blacks had been intentionally excluded from eligibility for election to the Board of Operatives. Because the court found election to the Board of Operatives to be "a valuable term, condition, or privilege of employment," it ordered the discrimination terminated.

The appellant submits that *Pettway* demonstrates the former Fifth Circuit's willingness to mandate nondiscriminatory elections to positions of ownership from an employee status. The decision in *Pettway* does not possess such elasticity. The employees remained employees even while serving on the board and never actually "owned" the company in their individual capacities, but acted "in trust" for all present and future employees. Furthermore, the owner's elaborate management structure caused election to the board to become a "valuable term, condition, or privilege of employment." We do not find *Pettway* controlling in the issue now before us.

We are also cognizant of *Lucido v. Cravath, Swaine & Moore*, 425 F.Supp. 123 (S.D.N.Y.1977). In *Lucido*, the District Court denied a motion to dismiss a complaint alleging an unlawful discharge of an associate on the basis of his national origin and religion. Many of the allegations in the appellant's complaint mirror allegations described in *Lucido*. Among them was a denial of partnership. "In [that] court's view, . . . the opportunity to become a partner at Cravath was a 'term, condition or privilege of employment' and an 'employment opportunity.'" *Id.* at 127. This statement could be classified as dicta since the court had already determined that the allegation of an unlawful discharge stated a claim for relief under Title VII. In any event, we respectfully disagree with that court's statement.[12] Decisions as to who will be partners are not within the protection of Title VII.

We do have serious concerns about any representations made to the appellant regarding her future consideration for partnership. We are well aware of the significance given a firm's partnership policy by a prospective associate in determining the proper career choice. If in fact these representations were deceptively made, then perhaps an action in breach of contract or misrepresentation may provide a more appropriate vehicle for the appellant to drive toward a legal remedy.[13]

### *In Through The Back Door*

█ In her third attempt to establish a cause of action under Title VII, the appellant has attempted entry through the proverbial back door. She contends that regardless of our decision on the partnership issue she has been denied "employment opportunities" in the firm's implementation of its "up or out" policy. In essence, she asserts the effect of the denial of partnership, subsequent termination of employment, deprived her of employment opportunities (frozen salary) and adversely affected her status as an employee (termination). 42 U.S.C. § 2000e–2(a)(2) (1976). While discriminatory termination alone may have stated a cause of action under Title VII for an unlawful discharge, *Lucido v. Cravath, Swaine & Moore*, when the termination is a result of the partnership decision, it loses its separate identity and must fall prey to the same ill-fate as her original attempt to apply Title VII to partnership decisions.

Prospective associates are apprised not only of their potential for partnership, but also of the consequences to be suffered following an unfavorable decision. Just as she accepted a representation made to her concerning partnership consideration, appellant likewise assumed the risk that an unfavorable decision would set in motion the termi-

---

12. It appears the *Lucido* case has come to an end. According to the Clerk's Office for the Southern District of New York, the case was dismissed with prejudice on July 28, 1981.

13. The appellant alleges King & Spalding also deprived her of employment opportunities by giving her less responsible work assignments, which prevented her from proving her value to the firm. *See Satz v. ITT Financial Corp.*, 619 F.2d 738 (8th Cir. 1980). Because she has elected to refrain from litigating these individual instances as violations of Title VII, we go no further.

nation procedure under the firm's "up or out" policy.

*The End*

■ Appellant creatively designed a new jurisdictional adventure for this Court to undertake. We have explored the new and intriguing trails, but find that each trail comes to a dead end. Title VII does not apply to those decisions dealing with the formation of partnerships. The dismissal is affirmed.

TJOFLAT, Circuit Judge, dissenting:

In 1972, Elizabeth Hishon accepted a position as an associate with King & Spalding, a large Atlanta law firm which operates as a general partnership. The partnership consists of approximately fifty active lawyers and employs approximately fifty additional lawyers as associates. At the time Hishon joined the firm, an associate was subject to discharge at the end of her sixth year. The firm also maintained an "out or up" policy whereby an associate who was not discharged at the end of the sixth year was invited to become a partner in the firm.

In May 1978, the partnership evaluated Hishon, along with other associates hired in 1972, and decided to discharge her from the firm; this of course rendered Hishon ineligible for partnership. She was promptly notified, and was granted the usual period of time to secure other employment. Eight months later, Hishon requested reconsideration of her discharge. At the conclusion of the May 1979 associate review meeting, the result was the same—Hishon's discharge was confirmed. She left the firm on December 31, 1979.

This account of the process culminating in Elizabeth Hishon's departure from King & Spalding differs from the majority's only verbally. See *ante* majority opinion at 1024. The majority says that King & Spalding decided not to invite Hishon to become a partner, and that by operation of the firm's uniformly applied "up or out" policy, Hishon incidentally had to leave the firm. The alternative account says that

King & Spalding decided to fire Hishon, and that she was consequently not eligible for partnership.

The alternative is offered *not* to insinuate that the partners conspired to get rid of Hishon under the guise of denying her partnership. Rather, it is offered to suggest that in reviewing the district court's dismissal of Hishon's complaint, we should be concerned with the reality of the events alleged, and not with the conventional verbal garb in which those events are cloaked.

What "actually happened" is neither what the majority says happened nor what the alternative says happened. So far as we should be concerned, what happened is that the King & Spalding partnership, having reviewed and evaluated Hishon's performance, made a decision which they communicated to her. The *direct* consequence of this decision, mediated neither by Hishon's will nor by any cause other than the partnership itself, was to deny Hishon membership and to terminate her employment. Regardless the words by which we know the decision, the decision was, undeniably, to discharge Hishon.

Hishon alleges, and we must assume, that King & Spalding discriminated against her on account of her sex by its decision to deny her partnership and to terminate her employment. The majority holds that " . . . when the termination is a result of the partnership decision, it loses its separate identity and must fall prey to the same ill-fate as her original attempt to apply Title VII to partnership decisions." This is too glib for me. While I agree that Title VII would not apply to the discrete decision whether to take on a new partner,[1] when the partnership decision inextricably and inevitably *is* a decision whether to terminate employment, I would hold that Title VII applies. Since this is such a case, I would reverse the district court's dismissal of Hishon's complaint and remand for further proceedings. I dissent.

1. For example, Title VII would not apply to the partnership's invitations to lawyers who were

not associates in the firm.