**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**DELIGHT WHOLESALE COMPANY, Defendant.**

**No. 90–0022–CV–W–5.**

United States District Court, W.D. Missouri, W.D.

June 13, 1991.

John H. Edmonds, Gail D. Cober, Karen Khan, Detroit, Mich., and Aileen S. Castellani, Asst. U.S. Atty., Kansas City, Mo., for plaintiff.

Roland B. Miller, III, Jack D. Rowe, Lathrop, Norquist & Miller, Kansas City, Mo., for defendant.

## ORDER

SCOTT O. WRIGHT, District Judge.

Before the Court are the parties' briefs concerning back pay and other equitable relief. Plaintiff United States Equal Employment Opportunity Commission (EEOC) brought this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. § 2000e, *et seq.* EEOC alleged that Defendant Delight Wholesale discriminated against its employee, Carol Childers, based on her sex. EEOC premised its complaint on defendant's alleged unlawful employment practices, which included unequal pay for equal work, demotion, failure to promote, and constructive discharge.

This case was tried before an advisory jury October 29 through November 1, 1990. After the jury returned its answers to special interrogatories, the Court adopted the jury's findings, holding the defendant liable. The Court found that: (1) defendant unlawfully demoted Ms. Childers based on her sex; (2) defendant paid Ms. Childers less for substantially the same work performed by a man; (3) defendant constructively discharged Ms. Childers based on her sex. Judgment in favor of plaintiff was entered on the Title VII claims.

The Court subsequently heard evidence on the issue of damages and the parties submitted briefs on the issue. The parties attempted unsuccessfully to settle the damages issue. After the frustrated settlement negotiations, the Court took up the issue of damages. The following analysis describes the factors the Court considered in computing the damages, deductions, prejudgment interest, and other equitable relief. Appendix B sets forth the calculation and the findings of damages.

## I. BACKGROUND

This order addresses the damages issue. The following analysis flows from the evidence presented at trial, the parties' jointly stipulated facts, and the briefs submitted on damages. The key facts presented by the parties place three time periods in dispute. The Court refers the parties to Appendix A, attached to this order. Appendix A provides a timeline of Ms. Childers' employment history and indicates the three periods in dispute. Before setting upon the task at hand, the damages calculation, some preliminary issues will be addressed.

Defendant opposes the finding of liability in this case. However, that issue was addressed during trial and the Court ruled that defendant was liable. That issue is not now before the Court.

Another background issue concerns EEOC's delay in pursuing this cause. The charging party, Ms. Childers, filed her discrimination charge against defendant on May 6, 1986. EEOC notified Delight Wholesale of the charge one week later. Within one month, Delight Wholesale furnished information requested by EEOC. More than a year passed before EEOC, on December 16, 1987, notified defendant that its Detroit office would handle the case in an effort to expedite the investigation. The EEOC's next communication with Delight Wholesale was made a year later, on December 12, 1988. At that time, EEOC requested further information which defendant furnished on January 5, 1989. On March 6, 1989, EEOC informed defendant that its investigation of the charge revealed issues of constructive discharge and pay discrimination. The EEOC issued a determination letter on August 15, 1989.

Defendant contends that it has been unduly prejudiced by the three-year delay in EEOC's investigation of Ms. Childers' charge. Delight Wholesale states that it was prejudiced at trial because only one of its witnesses was still employed by defendant, the documents and sales records were lost, and the company ownership had completely changed hands. Moreover, defendant submits that it is prejudiced by the effect EEOC's delay has on the damages

and the prejudgment interest claimed on behalf of Ms. Childers who was employed by defendant for only four months. Delight Wholesale also claims that it currently faces precarious financial circumstances.

In opposition, EEOC states that this Court ruled prior to trial on the issue of delay, as it pertains to defendant's laches defense. EEOC claims that defendant suffered no prejudice by the delay. EEOC points out that Delight Wholesale submitted all necessary evidence at trial and presented essential witnesses who sufficiently recalled the facts.

■ Prior to trial, the Court did deny defendant's motion to dismiss based on laches. Defendant presented considerable evidence at trial, without indicating that a key witness or important evidence was unavailable. The pretrial ruling does not preclude consideration of EEOC's delay within the Court's determination of the Title VII damage award.

Courts have considerable discretion to fashion an equitable award, taking the delay into account. *Compare Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975) (district court's equitable authority to determine damages in light of delay and prejudice to defendant) and *EEOC v. Westinghouse Elec. Corp.*, 592 F.2d 484, 485–86 (8th Cir.1979) (district court's discretionary and equitable authority to dismiss suit due to undue delay and substantial prejudice to defendant).

■ If EEOC had investigated and brought this suit in a more timely fashion, the Court might have ordered defendant to reinstate plaintiff in the position she should have had. At that point, defendant would not have faced potential damages for years of work plaintiff did not perform, nor would defendant have faced more than four years of prejudgment interest. EEOC's delay in this cause is a proper consideration at this stage of the proceeding.

## II. ANALYSIS

### A. *Computation of Damages*

Computation of damages in this case entails four areas of inquiry. The first question involves the method of calculating the backpay award; the Court must determine the relevant time period and the comparative wage for calculating backpay. Second, the computation must take into effect plaintiff's reasonable duty to mitigate; backpay damages must be offset by the amount which plaintiff did earn or could reasonably have earned in mitigation. The third point for the Court to consider is whether prejudgment interest should be awarded and, if so, the rate and method for its calculation. And, finally, the Court must consider whether front pay or reinstatement is appropriate. Each of these four questions is taken up below. The Court's final computation is set forth in Appendix B.

■ The underlying premise in computing a plaintiff's Title VII award is the concept of making the injured party whole again. *See e.g., Albemarle Paper Co.*, 422 U.S. at 418, 95 S.Ct. at 2372; *EEOC v. Riss Int'l Corp.*, 35 Fair Empl. Prac. 423, 1982 WL 277 (W.D.Mo.1982). Under this premise, the appropriateness of backpay relief for unlawful employment discrimination is presumed. *Albemarle Paper Co.*, 422 U.S. at 421, 95 S.Ct. at 2373; *King v. Staley*, 849 F.2d 1143, 1144 (8th Cir.1989). However, the presumption of back pay is balanced by three factors:

(1) whether plaintiff has reasonably mitigated damages, *see Brooks v. Woodline Motor Freight, Inc.*, 852 F.2d 1061, 1065 (8th Cir.1988);

(2) whether plaintiff's conduct in the suit has unduly prejudiced defendant, *see Albemarle Paper Co.*, 422 U.S. at 405, 424–25, 95 S.Ct. at 2374–75;

(3) the general goal to eradicate discrimination throughout the economy, *see Albemarle*, 422 U.S. at 421, 95 S.Ct. at 2373.

Each of these factors weighs in the Court's analysis below.

### 1. Computation of Backpay

■ In computing backpay damages, a court should calculate the amount of money the claimant could have reasonably

earned if the discrimination had not occurred. This figure should include the base pay, raises, and bonuses or benefits the claimant would have reasonably expected to earn. *See EEOC v. Financial Assurance, Inc.*, 624 F.Supp. 686, 692–93 (W.D.Mo.1985). The backpay award should be based on the salary for the position comparable to the one the claimant was unlawfully denied. *King*, 849 F.2d at 1145. This is called the "comparative" salary.

■ In the present case, Ms. Childers was unlawfully denied the position of single unit sales (SUS) manager based on her sex. The proper comparative wage is not what Ms. Childers was earning at the time of her discharge but, rather, it is the amount she would have earned but for the discrimination. Defendant's assertions to the contrary are without merit. In order to make Ms. Childers whole, the backpay award must be based on the salaries paid the two men who held the SUS manager position that had been denied Ms. Childers. *See Riss Int'l Corp.*, 35 Fair Empl.Prac. at 425 (successor's earnings and benefits are hypothetical comparative wage). Appendix B to this opinion incorporates the appropriate comparative wage.

Both parties have proffered their own versions of how backpay should be calculated. Defendant computes the backpay from June 6, 1986, the date of constructive discharge. In contrast, EEOC bases its computation on Ms. Childers' earnings for the entire year, including the time before the unlawful discrimination occurred. At other places in its briefs, EEOC identifies the constructive discharge as the date of discrimination. Based on the findings of liability, the Court concludes that Ms. Childers' backpay award should be computed commencing May 5, 1986, the date when defendant unlawfully demoted Ms. Childers and paid her less than the SUS manager received for comparable work.

## 2. Deductions from Backpay Award

■ The plaintiff in a Title VII case has a duty to mitigate damages. *See Brooks v. Woodline Motor Freight, Inc.*, 852 F.2d 1061, 1065 (8th Cir.1988) (age discrimina-

tion case). Therefore, calculation of plaintiff's backpay damages must be offset by any actual earnings plaintiff made during the relevant time and by the amount plaintiff could have earned with reasonable diligence. 42 U.S.C.A. § 2000e–5(g). The amounts plaintiff did earn, or reasonably should have earned, in mitigation are deducted from the backpay award. *See Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1273 (4th Cir.1985); *Riss Int'l Corp.*, 35 Fair Empl.Prac. at 425. Ms. Childers' actual earnings will be deducted from the backpay.

■ The defendant bears the burden to prove that plaintiff did not use reasonable efforts to mitigate. *Financial Assurance, Inc.*, 624 F. Supp. at 693. "[W]here the discharged Title VII plaintiff subsequently finds similar employment, but then voluntarily quits, back pay should be decreased by the amount he would have earned had he not quit." *Brady*, 753 F.2d at 1273 (citation omitted). If the plaintiff voluntarily quit a job for personal reasons, the period of backpay is tolled. *Id.* at 1278 (citations omitted). In such a case, the court should deduct from the backpay the minimum earnings that could have accrued for the tolled period. *EEOC v. Riss*, 35 Fair Empl.Prac. 423, 425–26 (W.D.Mo. 1982). For the purposes of this discussion, a "voluntary quit" shall refer to an instance where plaintiff is found to have voluntarily quit a job.

The Eighth Circuit has favorably cited a case from the Fifth Circuit involving a voluntary quit. *Di Salvo v. Chamber of Commerce*, 568 F.2d 593, 597 (8th Cir. 1978), citing *Nabors v. NLRB*, 323 F.2d 686, 692–93 (5th Cir.1963), *cert. denied*, 376 U.S. 911, 84 S.Ct. 666, 11 L.Ed.2d 609 (1964). In *Nabors*, the court affirmed an administrative decision that disallowed backpay for the time a claimant was physically unable to work and the court considered the effect of the claimant's quitting a job for personal reasons. *Nabors*, 323 F.2d at 693. The Fifth Circuit considered the period of disability and determined "that from the time [claimant] quit a job for personal reasons no back pay should be

allowed. [However,] ... the back pay should resume when he obtained another job." *Id.*

Defendant challenges plaintiff's backpay calculations, arguing that Ms. Childers failed to reasonably mitigate damages. Defendant further contends that Ms. Childers voluntarily quit three of the seven jobs she held after leaving Delight Wholesale and thereby relinquished her right to backpay. According to defendant, backpay relief should be cut off as of the date she voluntarily quit her job at King's, because she voluntarily incurred the loss of earnings. In the alternative, defendant contends that any award must be offset by the minimum amounts she could have earned, but for her voluntary quits. Delight Wholesale maintains that it is entitled to credits for the $14,400.00 per year earnings she could have made at King's.

Ms. Childers, EEOC contends, made more than reasonable efforts to mitigate damages. She held seven different jobs for various periods of time, subsequent to the constructive discharge date. EEOC argues against any deduction based on a failure to mitigate or a voluntary quit.

Three questions emanate from Ms. Childers' three, allegedly voluntary employment terminations. The questions center on how backpay damages should be calculated for the three time periods following each job termination. *See* Appendix A (Timeline). If Ms. Childers voluntary quit any job, then the earnings she could have made had she continued in the job should be deducted from the backpay award. For that reason, the Court will determine whether any of the employment terminations should be characterized as a voluntary quit and how that may affect the backpay award.

### a) *Voluntary Quit at King's*

■ Ms. Childers received the offer to work at King's while she was still employed by Delight Wholesale. She waited one or two weeks after her constructive discharge before she began working at King's in mid-to-late June of 1986. Ms. Childers managed one of King's stores, earning approximately $1250.00 per month.

She resigned the job at King's in August, 1986 for personal reasons.

EEOC explains that Ms. Childers was justified in voluntarily quitting work at King's. Her reasons included the long hours she had to work and the physical and mental toll that took on her. The job often required twelve-hour days which adversely affected her relationship with her eighteen-year-old daughter. EEOC asserts that Ms. Childers actively sought employment during the time period between her position at King's and her next full-time job, at St. Mary's Manor. The evidence showed that Ms. Childers held five temporary jobs after leaving King's and before obtaining a permanent position at St. Mary's Manor. The EEOC submits that her efforts demonstrate reasonable mitigation.

The evidence at trial demonstrated that the position of SUS manager involved long hours, being on call, and dealing with management problems similar to those Ms. Childers experienced at King's. The two jobs are comparable. Ms. Childers testified that she quit King's because:

> I had no home life. I had a young daughter at home. In fact by the time I got home I was so physically and mentally exhausted over what I had done at work that even if my daughter had something going on or wanted to do something, I was too tired.

The Court concludes that Ms. Childers voluntarily quit her employment at King's for personal reasons. Based on the previously cited case law, this Court will deduct the minimum earnings Ms. Childers could have earned at King's from her backpay award. However, backpay damages will resume from the time Ms. Childers obtained her next full-time job. *See Nabors,* 323 F.2d at 693. This deduction will affect backpay damages from the time she quit King's until she obtained permanent employment at St. Mary's Manor on July 1, 1987. The backpay computation will reflect the actual and potential earnings Ms. Childers could have earned from June 9, 1986, when she first could have begun work at King's, through July 1, 1987, when she was hired at St. Mary's Manor. *See*

*e.g., Riss Int'l Corp.*, 35 Fair Empl.Prac. at 423 (quitting a subsequent job does not terminate right to backpay, however, the minimum earnings which could have been accrued are deducted from backpay, as though actually received).

### b) Voluntary Quit at St. Mary's Manor

■ The evidence demonstrated that Ms. Childers actively sought employment after she voluntarily quit King's. She worked part-time at five temporary jobs between the time she left King's and the time she was hired as a hair stylist at St. Mary's Manor, on July 1, 1987. Ms. Childers worked fulltime at St. Mary's, initially earning between $5.50 and $5.75 per hour. After six months, she earned $6.00 per hour for fulltime employment. Ms. Childers left her job at St. Mary's on August 15, 1988, because of a management reorganization. St. Mary's management terminated her position and in its place instituted a contract job where the stylist paid rent and received only commissions. Ms. Childers turned down the new position, believing that she could not earn enough to make a decent living.

Defendant argues that Ms. Childers voluntarily quit St. Mary's Manor and that she unjustifiably refused the new position which would have paid more. Plaintiff contends that Ms. Childers' job was terminated and that she rightfully refused a substantially different job on reasonable grounds.

The Court has reviewed the testimony of the St. Mary's manager and the circumstances surrounding Ms. Childers' termination. The manager, Mr. Levitt, explained that Ms. Childers' position as an hourly paid hair stylist was eliminated. Ms. Childers turned down the new position at St. Mary's Manor due to her concern that she could not make enough income on a commission basis. *See e.g., Riss Int'l Corp.*, 35 Fair Empl.Prac. at 423 (backpay is appropriate for reasonable period of unemployment while seeking a higher-paying job). She reasonably refused a substantially different job for business, not personal, reasons. Defendant has failed to meet its burden to show that Ms. Childers' termi-nation from St. Mary's should be considered a voluntary, unjustified quit.

Because these circumstances do not indicate a voluntary quit, a deduction is inappropriate. Ms. Childers is entitled to receive backpay for the difference between the amounts she actually earned and the comparative's earnings, for the time she worked at St. Mary's until she quit work at her next full-time job, Pinkerton's.

### c) Voluntary Quit at Pinkerton's

■ A question arises concerning the effect of Ms. Childers quitting the job she held at Pinkerton's. Ms. Childers was hired to work at Pinkerton's, beginning June 12, 1990. She earned $4.90 per hour and worked as many as sixty hours a week. She quit working at Pinkerton's on October 4, 1990 due to her health problems. Plaintiff has provided Ms. Childers' last paycheck stub as an exhibit. That paycheck stub indicates that she worked 73.25 regular hours and 1.50 overtime hours for a two-week period. Her gross earnings while employed at Pinkerton's were $4253.50. In computing plaintiff's backpay award for the period she worked at Pinkerton's, the Court will deduct Ms. Childers' actual earnings.

The parties dispute the effect that Ms. Childers' voluntarily quitting Pinkerton's should have on backpay damages accruing after October 4, 1990. The effect of a voluntary quit has been discussed previously. Whether Ms. Childers quit for health reasons or for personal reasons, those reasons are personal as compared to business or work-related reasons. Therefore, the Court must construe this as a voluntary quit for personal reasons. The health reasons would have also interfered with Ms. Childers' ability to work at Delight Wholesale. Ms. Childers had no long-term sick pay or disability benefits at Delight Wholesale. Therefore, she is not entitled to such benefits for the period following her quit for health reasons.

In summary, Ms. Childers' backpay award must be offset by the amount she reasonably could have earned had she remained in Pinkerton's employ. Because

she earned less at Pinkerton's than her comparative made as the SUS manager, she is entitled to backpay for the difference for the period between her voluntary quit at Pinkerton's and her next fulltime job. The Court finds that Pinkerton's employed Ms. Childers fulltime at $4.90 an hour. There is no evidence as to the regularity of overtime at Pinkerton's. Therefore, the Court will assume that Ms. Childers could reasonably have worked forty hours a week at $4.90 per hour. The backpay award will be offset by $196.00 per week, her minimum potential earnings at Pinkerton's, until the time Ms. Childers obtained her next full-time employment, at Kansas City Stadium Complex on December 1, 1990.

### 3. Reinstatement or Front Pay

■ EEOC asserts that reinstatement or an award of one year front pay is appropriate in this case. Reinstatement, in this case, might entail an order requiring that defendant hire Ms. Childers as the SUS manager or hire her as soon as that position becomes open. "Front pay" refers to future monetary damages a claimant is expected to incur as a result of the unlawful employment discrimination. *See Financial Assurance, Inc.*, 624 F.Supp. at 692.

Delight Wholesale opposes reinstatement and informs the Court that Ms. Childers testified at her deposition that she did not want reinstatement. Defendant further states that the current SUS manager is an innocent party who has held his position for a number of years.

■ The Court has discretion to deny reinstatement where it would injure an innocent employee. *See King, supra,* 849 F.2d at 1145 (court reinstated plaintiff but refused to promote her because that would injure innocent party); *Harper v. General Grocers Co.*, 590 F.2d 713, 717 (8th Cir.1979) (district court has discretion to strike a balance between interests of plaintiff and other employees). The Court will deny reinstatement in this case, because Ms. Childers testified she did not seek reinstatement and because the present SUS manager has held the position for three years.

■ EEOC seeks, in the alternative, an award of front pay for one year. A court has discretion in awarding damages for a Title VII violation, including the discretion to award front pay. *Financial Assurance, Inc.*, 624 F.Supp. at 695. The court in *Financial Assurance, Inc.* declined to award front pay, stating, "Given the length of time it has take the court to render its decision in this matter ... [the] backpay award itself will make [claimant] 'whole.'" *Id.* In reviewing EEOC's prayer for front pay relief, this Court has considered the delay in pursuing this cause and the delay in the Court's entry of judgment. The Court has also considered Ms. Childers' unstable employment history, and the likelihood that she would have remained a long-term employee at Delight Wholesale had the discrimination not taken place. The Court concludes that backpay damages covering over four and one-half years will adequately compensate plaintiff for the sexual discrimination Ms. Childers experienced. An award of front pay is inappropriate in this Court's opinion.

### 4. Prejudgment Interest

■ Section 2000e–5(g), Title 42 of the United States Code, authorizes a wide range of relief for discrimination under Title VII. An award of prejudgment interest falls within the district court's discretion. Prejudgment interest has been recognized as another form of relief, intended to further the concept of "make whole" relief. *EEOC v. Rath Packing Co.*, 787 F.2d 318, 333 (8th Cir.1986). Although prejudgment interest is frequently awarded in cases such as the one at bar, some courts have declined to make such an award. *See Id.* at 334 (affirms district court's denial of prejudgment interest based on the financial impact to the employer, the delay that occurred, and the uncertainty of backpay damages); *Taylor v. Philips Indus., Inc.*, 593 F.2d 783, 787 (7th Cir.1979) (per curiam) (affirms denial of prejudgment interest as within the discretion of the trial court); *cf. Financial Assurance, Inc.*, 624

F.Supp. at 694 (awarding prejudgment interest based on IRS penalty rate).

In considering whether to award prejudgment interest, the limits of the "make whole" policy should be examined. The *Albemarle* Court expressed that "a party may not be 'entitled' to relief if its conduct of the cause has improperly and substantially prejudiced the other party." 422 U.S. at 424, 95 S.Ct. at 2375. In that case, the Supreme Court reviewed the plaintiffs' tardy and inconsistent pursuit of their cause and weighed that against whether plaintiffs' conduct was excusable and whether defendant was significantly prejudiced by such conduct. *Id. Albemarle* involved a question of backpay, rather than prejudgment interest. However, the same considerations should apply to either form of relief.

In the present case, EEOC seeks prejudgment interest spanning the time from the discrimination through the date of this judgment. EEOC proposes calculating prejudgment interest quarterly, according to the Internal Revenue Service (IRS) penalty rate. The IRS rate for this time period would apply rates of nine to twelve percent, compounded quarterly.

Defendant opposes an award of prejudgment interest or, alternatively, argues that the interest should based on the average 52–week Treasury Bill rate from May, 1986 through January 10, 1991. Defendant's proposed interest rate is 7.39%, and is not compounded. Delight Wholesale contests the penalty aspect of the EEOC's proposed interest rate and the effect compounding would have on an award of interest in this case. Delight Wholesale contends that EEOC's calculation amounts to more than $12,000.00 in interest, $4,786.14 which is for only 1990. Defendant asserts that an award of such an amount is unjustified, especially in light of Delight Wholesale's full cooperation from the time it received notice of Ms. Childers' charge.

The Court concurs with defendant. In this case, compounded interest at the IRS penalty rate would unfairly penalize defendant, contrary to Title VII's goal of compensation. The EEOC's conduct in its pursuit of this case resulted in delay that would substantially prejudice defendant. Thus, EEOC may not be entitled to relief in the form of prejudgment interest. The Court has taken into account other considerations, including the adverse financial impact on Delight Wholesale, Ms. Childers' unstable employment history, the fact that the company has changed hands and the current management is innocent of the wrongdoing. Balancing those factors against the concept of "make whole" relief convinces the Court that plaintiff will be adequately compensated by backpay damages alone. Therefore, prejudgment interest will be denied.

## B. *Request for Other Non-monetary Relief*

EEOC has also requested that the Court grant further, non-monetary relief. The requested relief consists of the Court retaining supervision over Delight Wholesale and jurisdiction over this case for one year. EEOC seeks a Court order directing defendant to comply with the law under Title VII. Additionally, EEOC moves the Court to order defendant to post a notice concerning employees' rights under Title VII.

Delight Wholesale submits that an order requiring compliance with the law and requiring Court supervision is unnecessary and wasteful of the Court's resources. Defendant declares that such relief duplicates the law with which it must already comply. In further support of its position, defendant states that it has not been cited for any Title VII violations during the four and one-half years that this cause has been pending, that the antagonists are no longer in its employ, and that this was an isolated incident.

The Court agrees with defendant's position. This Court does not have the time nor the inclination to serve as the "super manager" of Delight Wholesale. Such an order is unnecessary in these circumstances. However, posting a notice to employees concerning Title VII is appropriate

and realistic relief. *See* Appendix C (notice).

### III. CONCLUSION

Plaintiff is entitled to backpay damages, an appropriate form of relief in furthering the "make whole" policy behind Title VII damages. Computation of backpay is set forth in Appendix B. Plaintiff's backpay damages are offset by deductions for Ms. Childers' actual earnings and deductions attributed to potential earnings she could have made, but for her voluntarily quitting two jobs. Plaintiff's request for reinstatement is denied for the reasons set forth in this order, including Ms. Childers' testimony that she did not seek reinstatement. The Court denies plaintiff's request for prejudgment interest due to its prejudicial effect on defendant and due to the fact that backpay relief is adequate to make plaintiff whole. The Court grants plaintiff's prayer for non-monetary relief only insofar as defendant must post a notice concerning Title VII for ninety days. *See* Appendix C.

The Court's backpay computation is broken down into the following six time periods. The backpay computation takes into account the difference between her earnings and those of the comparative SUS manager and applies the appropriate deductions to each of the time periods.

(1) The time when Ms. Childers remained at Delight Wholesale after she was demoted and a man was hired as SUS manager (May 5, 1986—June 6, 1986);

(2) The time when Ms. Childers was, or could have been, employed at King's where she earned less than the comparative wage of the SUS manager, including the time between Ms. Childers' voluntary quit from King's and her next fulltime job (June 9, 1986—July 1, 1987);

(3) The time when Ms. Childers worked fulltime at St. Mary's Manor (July 1, 1987—August 15, 1988);

(4) The time between Ms. Childers' termination from employment at St. Mary's Manor and her next fulltime job (August 15, 1988—June 12, 1990);

(5) The time when Ms. Childers worked, or could have worked, at Pinkerton's, until her next fulltime job (June 12, 1990 —December 1, 1990);

(6) The time between Ms. Childers beginning work at her current job, Kansas City Stadium Complex, and the date of this judgment (December 1, 1990— Present).

It is hereby

ORDERED that the jury's findings entered November 1, 1990 are adopted by the Court. Defendant is liable under Title VII for discriminating against Carol Childers on the basis of her sex. It is further

ORDERED that backpay damages are awarded in favor of plaintiff, in the amount of $58,765.28. It is further

ORDERED that defendant shall, within twenty (20) calendar days after entry of this order, post the notice set forth in Appendix C. The notice shall remain posted for ninety (90) days in prominent positions on all employee bulletin boards and in the personnel office. EEOC may inspect the posted notice after giving reasonable notice to defendant. It is further

ORDERED that plaintiff's requests for prejudgment interest, reinstatement or front pay, and other non-monetary relief are denied. It is further

ORDERED that plaintiff shall have until July 3, 1991 to file a motion for attorneys' fees, and defendant shall have until July 19, 1991 to respond to that motion.

### APPENDIX A
#### Timeline of Ms. Childers' Employment History

1/22/86 — Ms. Childers hired at Delight at $150/wk, plus commissions.

4/6/86 — Ms. Childers received raise to $175/wk.

5/5/86 — Ms. Childers job redefined, she received $210/wk, but no commissions. Same day, Delight hired Mike White as SUS manager at $300/wk plus 2% commission.

5/6/86 — Ms. Childers filed charge of discrimination with EEOC.

6/6/86 — Ms. Childers' employment at Delight ended. She had a standing offer to work at King's.

6/??/86 — Ms. Childers began work at King's.
** 8/6/86 — Ms. Childers quit King's.
8/7/86 to 7/1/87 — Ms. Childers held 5 temporary jobs.
7/1/87 — Ms. Childers hired at St. Mary's Manor.
** 8/15/88 — Ms. Childers employment at St. Mary's Manor ended.
3/??/89 — Ms. Childers opened beauty salon.
5/??/90 — Ms. Childers sold her share of beauty salon for business reasons.
6/12/90 — Ms. Childers hired at Pinkerton's at $4.90/hr.
** 10/4/90 — Ms. Childers quit Pinkerton's for health reasons.
12/1/90 — Ms. Childers hired at Stadium Complex at $300/wk.

** Dispute over the effect of Ms. Childers' quitting this job.

## APPENDIX B
### Computation of Backpay Damages

| Time Period[1] | Comparative Earnings | Ms. Childers' Actual Earnings and Other Deductions[2] | Backpay Damages |
|---|---|---|---|
| 1. 5/5/86–6/6/86 | $ 1,500.00[3]<br>624.68[4]<br>$ 2,124.68 | $ 908.25 | $ 1,216.43 |
| 2. 6/9/86–6/30/87 | $11,212.59[5]<br>8,612.50[6]<br>$19,825.09 | $ 8,655.34<br>7,759.96<br>$16,415.30 | $ 3,409.79 |
| 3. 7/1/87–8/15/88 | $ 8,612.50[7]<br>11,866.56[8]<br>$20,479.06 | $ 5,720.00<br>7,680.00<br>$13,400.00 | $ 7,079.06 |
| 4. 8/15/88–6/12/90 | $ 7,416.84[9]<br>21,748.46[10]<br>10,709.72[11]<br>$39,875.02 | $ 726.00<br>1,892.72<br>$ 2,618.72 | $37,256.30 |
| 5. 6/12/90–12/1/90 | $11,641.00[12] | $ 4,900.00 | $ 6,741.00 |
| 6. 12/1/90–6/13/91 | $ 1,862.70[13]<br>9,600.00[14]<br>$11,462.70 | $ 1,200.00<br>7,200.00<br>$ 8,400.00 | $ 3,062.70 |
| Total | | | $58,765.28 |

### End Notes
1. Time periods correlate to previous analysis, as summarized on page 21.
2. "Other Deductions" includes off sets for the potential earnings Ms. Childers could have made if she had not voluntarily quit certain jobs.
3. Portion of 1986 earnings.
4. Commissions earned during period.
5. Portion earned in 1986.
6. Portion earned in 1987.
7. Portion earned in 1987.
8. Portion earned during 1988.
9. Portion earned in 1988.
10. Portion earned in 1989.
11. Portion earned in 1990, including bonus earned in 1990 but paid in 1991.
12. Portion earned in 1990, including bonus earned in 1990 but paid in 1991.
13. Portion earned in 1990, including bonus earned in 1990 but paid in 1991.
14. Portion earned in 1991.

---

## APPENDIX C

This notice is being posted as part of the remedy ordered by the United States District Court, Western District of Missouri, Western Division in *EEOC v. Delight*

*Wholesale Company,* Civil Action No. 90–0022–CV–W–5. In this suit, the United States Equal Employment Opportunity Commission (the "Commission") alleged that Delight Wholesale Company ("Delight Wholesale"), discriminated against Carol Childers because of her sex (female), in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000(e) *et seq.* (Title VII).

This notice is being posted to inform you of your rights guaranteed by federal law under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.,* that prohibits discrimination against any employee on the basis of race, color, religion, sex, or national origin with regard to any term or condition of employment, including hiring, layoff, recall, promotion, discharge, the payment of wages and fringe benefits and disciplinary actions.

The United States Equal Employment Opportunity Commission is the federal agency which investigates charges of unlawful employment discrimination and, if necessary, brings lawsuits in federal court to enforce Title VII.

Delight Wholesale Company supports and will comply with this federal law in all respects and will not take any action against any employees because they have exercised their rights under this law. Delight Wholesale Company will provide equal consideration and treatment to its employees except as permitted by law.

DELIGHT WHOLESALE COMPANY