973 F.2d 664
 59 Fair Empl.Prac.Cas. (BNA) 1222,
59 Empl. Prac. Dec. P 41,729
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Appellee,
v.
DELIGHT WHOLESALE COMPANY, Appellant.
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Appellant,
v.
DELIGHT WHOLESALE COMPANY, Appellee.
 Nos. 91-3661, 91-3786.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 10, 1992.
Decided Aug. 25, 1992.
 
 Roland B. Miller, III, Kansas City, Mo., argued (Jack D. Rowe, on the brief), for appellant.
 Lamont N. White, Washington, D.C., argued, for appellee.
 Before RICHARD S. ARNOLD, Chief Judge, HENLEY, Senior Circuit Judge, and MAGILL, Circuit Judge.
 HENLEY, Senior Circuit Judge.
 
 
 1
 Delight Wholesale appeals from the final judgment of the district court,[1] which held Delight liable for violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and awarded back pay to the victim of the unlawful sex discrimination, Carol Childers. EEOC cross-appeals, challenging a deduction from the back pay award and the district court's refusal to award prejudgment interest. We affirm.
 
 
 2
 Delight Wholesale Company (Delight) distributes ice cream products on the wholesale level. Delight has nineteen offices nationwide and a corporate headquarters in Kansas City, Missouri. During the time period at issue in this litigation, approximately ninety per cent of the company's sales were wholesale "vending sales" to vendors, who sold the products at retail from ice cream trucks. Delight's remaining ice cream sales, "non-vending sales," were to schools, convenience stores, snack bars and a few others.
 
 
 3
 Delight's Kansas City Branch Manager, William Foley, hired Carol Childers on January 22, 1986. Childers served as a sales representative for a line of cookies that had been added to the non-vending sales program. Her starting pay was $150.00 per week, plus a modest commission and a car allowance. She received a raise to $175.00 per week on April 6, 1986. Childers did not have an office. She handled most of her sales responsibilities by working out of her car. Childers's sales increased steadily throughout the period of her employment.[2] She never received any criticism of her job performance.
 
 
 4
 In the spring of 1986, Delight formed a separate division for non-vending or "single unit" sales (SUS). When Childers reported to work on May 5, 1986, Foley introduced her to Mike White and informed her that White would be the manager of SUS sales. Foley told Childers that she was to work as White's assistant and train him for his new job. According to the testimony of Lana Henderson, one of Delight's owners, James Gross, stated that White had been hired because the company felt that it needed a man to perform the SUS job. Foley and Gross knew White from the company softball team. They interviewed him at a neighborhood sports bar.
 
 
 5
 White's starting salary was $300.00 per week, plus a weekly gas allowance of $25.00 and a two per cent commission. Childers's salary increased to $210.00 per week, but she no longer received a commission. They were assigned to an office above a garage. The office had no water or toilet facilities. Childers testified that the office was dirty and smelly and that she frequently saw a rat.
 
 
 6
 Childers filed a sex discrimination charge with the Kansas City office of the Equal Employment Opportunity Commission (EEOC) on May 6, 1986. She alleged that she had been demoted from sales manager to assistant sales manager because of her sex. Delight received notice of the charge on May 13, 1986. On May 20, 1986, Foley revoked Childers's gas allowance and directed her not to make any more sales calls. Childers testified that people stopped speaking to her at work and her office key was taken away. Mechanics started locking the bathroom downstairs when they completed their work day in the early afternoon, so that she had to leave the premises in order to go to the bathroom. The mechanics also removed a cooler in which they had permitted Childers to store cold drinks.
 
 
 7
 Childers resigned on June 6, 1986. On June 12, 1986, she began working as the manager of a former client, King's Grocery Store. Her salary at King's was $553.85 every two weeks. Childers handled all aspects of the store's operations, frequently working from 3:00 a.m. to 7:00 p.m. or later. She resigned on August 6, 1986, claiming mental and physical exhaustion and the absence of meaningful time with her daughter.
 
 
 8
 Childers then held five temporary jobs before securing full-time employment as a beautician at St. Mary's Manor, a nursing home, on July 1, 1987. Her starting wage at St. Mary's was $5.50 per hour. She received a raise to $6.00 per hour after six months. In August 1988, St. Mary's decided to operate the beauty shop on a commission lease basis. After concluding that she would not earn as much money as she had earned at an hourly wage, Childers rejected the lease arrangement. She quit her job at St. Mary's on August 15, 1988.
 
 
 9
 In March 1989, Childers opened a beauty shop as a partner with another woman. In May 1990, Childers was having difficulty making ends meet. She sold her share in the shop to her partner. On June 12, 1990, Childers began work as a security officer for Pinkerton's. Her starting salary of $4.75 per hour was eventually increased to $4.90 per hour. Childers quit the Pinkerton's job on October 4, 1990, because she had developed heart problems. On December 1, 1990, Childers began employment at the Stadium Inn at the rate of $300.00 per week.[3]
 
 
 10
 Delight responded to Childers's charge and EEOC's written request for information on June 4, 1986. EEOC notified Delight on December 16, 1987 that the charge had been transferred to the Detroit office for investigation. The Detroit office requested additional information on December 12, 1988. Delight complied. On February 14, 1989, EEOC requested more information and requested that Delight settle. EEOC notified Delight on March 9, 1989 that Childers's case raised issues of constructive discharge and wage discrimination.
 
 
 11
 The Detroit office issued a Determination Letter on August 15, 1989, stating that its investigation had revealed evidence that Childers's allegations of discrimination were true. The Determination Letter mentioned evidence of wage discrimination and constructive discharge. After conciliation efforts failed, EEOC filed suit under Title VII in January 1990 alleging that Delight unlawfully discriminated against Childers on the basis of her sex. It was charged that Delight's unlawful practices included unequal pay for equal work, demotion, failure to promote and constructive discharge.
 
 
 12
 The district court tried the case before an advisory jury. See Fed.R.Civ.P. 39(c). After the jury answered special interrogatories, the district court adopted the jury's findings. The court found: Delight (1) unlawfully demoted Childers on the basis of her sex; (2) paid Childers less for substantially the same work performed by a man, and (3) constructively discharged Childers on the basis of her sex. EEOC v. Delight Wholesale Co., 765 F.Supp. 583, 586 (W.D.Mo.1991). The district court awarded Childers $58,765.28 in back pay[4] and ordered Delight to post a notice that it would not discriminate. Id. at 593. The district court denied EEOC's request for prejudgment interest, reinstatement, front pay and other relief. Id.
 
 
 13
 The court based Childers's back pay award upon her " 'comparative' salary," the wage she would have earned but for the discrimination. Id. at 588. It was held that Childers's comparative salary was the salary paid the SUS manager. The back pay award was to begin with the date of her demotion, May 5, 1986. Id.
 
 
 14
 Childers's back pay award was reduced by her actual earnings during her post-Delight employment as well as by the amount that she would have earned had she not voluntarily quit her jobs at King's and Pinkerton's. Id. at 589-91.[5] The district court also found that Childers had not voluntarily quit her job at St. Mary's; rather, she made a reasonable business decision to turn down a substantially different job. Id. at 590. Accordingly, no deduction was made from the back pay award for the amount she could have earned had she remained at the nursing home. Id.
 
 
 15
 After an unsuccessful motion to alter and amend the judgment, Delight appealed.
 
 
 16
 Delight first asserts that EEOC's allegations of pay discrimination and constructive discharge were not properly before the district court because they were not contained in the charge filed by Childers. We disagree.
 
 
 17
 The permissible scope of an EEOC lawsuit is not confined to the specific allegations in the charge; rather, it may extend to any discrimination like or related to the substance of the allegations in the charge and which reasonably can be expected to grow out of the investigation triggered by the charge. Nealon v. Stone, 958 F.2d 584, 590 (4th Cir.1992) (citations omitted); Satz v. ITT Financial Corp., 619 F.2d 738, 741 (8th Cir.1980); EEOC v. Brookhaven Bank & Trust Co., 614 F.2d 1022, 1024 (5th Cir.1980) (quoting Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir.1970)). The original charge is sufficient to support EEOC action, including a civil suit, for any discrimination stated in the charge or developed during a reasonable investigation of the charge, so long as the additional allegations of discrimination are included in the reasonable cause determination and subject to a conciliation proceeding. Brookhaven, 614 F.2d at 1025; EEOC v. General Elec. Co., 532 F.2d 359, 366 (4th Cir.1976) (footnote omitted).
 
 
 18
 Here, the original charge alleged only discriminatory demotion. However, in the course of its reasonable investigation of this allegation, EEOC uncovered evidence of constructive discharge and wage discrimination. The constructive discharge and wage discrimination claims are clearly like or related to the substance of the EEOC charge. E.g., Satz, 619 F.2d at 741-42. Furthermore, EEOC included the allegations of constructive discharge and wage discrimination in its reasonable cause determination on August 15, 1989. EEOC gave Delight an opportunity to conciliate all three allegations. Thus, all three claims were properly before the district court. Nealon, 958 F.2d at 590; Satz, 619 F.2d at 741-42; Brookhaven, 614 F.2d at 1025; General Electric, 532 F.2d at 366.
 
 
 19
 Delight next contends, with respect to the allegations of employment discrimination, that EEOC failed to meet its burdens of proof under Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-54, 101 S.Ct. 1089, 1092-94, 67 L.Ed.2d 207 (1981), and McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The district court's factual findings are reviewed only for clear error. Fed.R.Civ.P. 52(a); see, e.g., Anderson v. City of Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); Ingram v. Missouri Pac. R.R. Co., 897 F.2d 1450, 1454-55 (8th Cir.1990). From our review of the record, including the transcript, we conclude that the district court's findings are not clearly erroneous.
 
 
 20
 Delight also asserts that EEOC failed to come forward with sufficient evidence of constructive discharge. We disagree. The district court did not clearly err by finding that Delight deliberately created an intolerable work place with the intent of causing Childers to resign. Johnson v. Bunny Bread Co., 646 F.2d 1250, 1256 (8th Cir.1981) (citation omitted); see, e.g., Hervey v. City of Little Rock, 787 F.2d 1223, 1231 (8th Cir.1986); Taylor v. Jones, 653 F.2d 1193, 1199 (8th Cir.1980).
 
 
 21
 Delight further alleges that EEOC failed to present sufficient evidence to support the finding of wage discrimination. Delight asserts that White and Childers did not perform equal work because White assumed the newly created position of SUS manager.
 
 
 22
 Where, as here, the plaintiff raises a claim of unequal pay for equal work on the basis of sex, the standards are the same whether the plaintiff proceeds under Title VII or the Equal Pay Act. McKee v. Bi-State Dev. Agency, 801 F.2d 1014, 1019 (8th Cir.1986). The plaintiff must prove that the employer pays different wages to employees of opposite sexes for " 'equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions.' " Id. at 1019 (quoting Corning Glass Works v. Brennan, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974)). We accord great weight to the district court's factual findings and review only for clear error. McKee, 801 F.2d at 1020; Orahood v. Board of Trustees, 645 F.2d 651, 654 (8th Cir.1981); Johnson v. Nordstrom-Larpenteur Agency, Inc., 623 F.2d 1279, 1281 (8th Cir.1980).
 
 
 23
 The district court found that Delight paid Childers less than it paid a man for substantially the same work. Delight, 765 F.Supp. at 586. The testimony and evidence presented at trial indicated that White and Childers performed substantially equal work. On the record as a whole, we conclude that the district court did not clearly err.
 
 
 24
 Delight raises other somewhat related challenges to the district court's computation of the back pay award. First, Delight maintains that the district court should have reduced or eliminated the back pay award due to EEOC's three and one-half year delay in bringing suit. Delight contends that the delay prejudiced its defense.
 
 
 25
 The district court has broad equitable discretion to fashion back pay awards in order to make the Title VII victim whole. See Franks v. Bowman Transp. Co., Inc., 424 U.S. 747, 763, 96 S.Ct. 1251, 1263, 47 L.Ed.2d 444 (1976); King v. Staley, 849 F.2d 1143, 1144 (8th Cir.1988). Once the trial court found unlawful sex discrimination in violation of Title VII, there was a strong presumption that Childers was entitled to a back pay award on the basis of what she would have earned absent the discrimination, less any amount she could have earned in mitigation. King, 849 F.2d at 1144-45; DiSalvo v. Chamber of Commerce, 568 F.2d 593, 597 (8th Cir.1978). The district court noted that Delight "presented considerable evidence at trial, without indicating that a key witness or important evidence was unavailable." Delight, 765 F.Supp. at 587. In the circumstances, it was not abuse of discretion for the court then to conclude that Childers should not be deprived of make-whole compensation due to EEOC's delay. Cf. Washington v. Kroger Co., 671 F.2d 1072, 1078 (8th Cir.1982) (approving award of prejudgment interest despite almost eleven year delay by EEOC in bringing suit).
 
 
 26
 Delight also contests the back pay award on the grounds that the district court should have computed Childers's baseline Delight pay on the basis of her pay at termination, and not on the basis of the comparative salary of the SUS manager. The district court not improperly determined that "the back pay award should be based on the salary for the position comparable to the one the claimant was unlawfully denied." Delight, 765 F.Supp. at 588 (citing King, 849 F.2d at 1145). Absent Delight's unlawful discrimination, Childers would have earned the salary paid the males who assumed the position of SUS manager.
 
 
 27
 Finally, Delight contends that the district court should have greatly reduced or eliminated the back pay award to account for Childers's failure to exercise reasonable diligence to mitigate damages. 42 U.S.C. § 2000e-5(g) (1988); see also Ford Motor Co. v. EEOC, 458 U.S. 219, 231, 102 S.Ct. 3057, 3065, 73 L.Ed.2d 721 (1982) (statutory duty to mitigate requires Title VII claimants to use reasonable diligence in finding other suitable employment).[6] We disagree.
 
 
 28
 A Title VII claimant has a duty to mitigate damages by exercising reasonable diligence to locate other suitable employment and maintain a suitable job once it is located. Brady v. Thurston Motor Lines, Inc., 753 F.2d 1269, 1277 (4th Cir.1985) (citing Ford Motor, 458 U.S. at 231, 102 S.Ct. at 3065); see also 42 U.S.C. § 2000e-5 ("[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable"). Although a claimant fails to mitigate damages by voluntarily quitting comparable interim employment for personal reasons, a voluntary quit does not toll the back pay period when it is motivated by unreasonable working conditions or an earnest search for better employment. Brady, 753 F.2d at 1277-78.
 
 
 29
 The record supports the district court's determination that Childers voluntarily quit King's and Pinkerton's for personal reasons, including her health and the need to spend more time with her daughter. Accordingly, the district court properly tolled the back pay award during the period between each voluntary quit and her next full-time permanent position. Brady, 753 F.2d at 1278; DiSalvo, 568 F.2d at 597-98. Similarly, the record indicates that Childers left her position at St. Mary's for non-personal business reasons that included a need to search for better-paying employment. Thus, the district court properly declined to toll the back pay award during the period between Childers's decision to leave St. Mary's and her next full-time permanent position. Brady, 753 F.2d at 1278. Finding no abuse of discretion in the manner in which the district court computed the back pay award, we reject Delight's claims of error.
 
 
 30
 On cross-appeal, EEOC raises two questions. First, EEOC contends that the district court misconstrued Brady by reducing the back pay award by the amount Childers would have earned at King's until she found her next full-time position. EEOC asserts that no reduction should have been made because the district court found that Childers's decision to leave King's was reasonable. The district court unambiguously held that Childers voluntarily quit her job at King's for personal reasons. Delight, 765 F.Supp. at 589. Under Brady, therefore, the district court properly tolled the back pay period until Childers secured her next full-time position. Brady, 753 F.2d at 1278.
 
 
 31
 EEOC next asserts that the district court erred by denying an award of pre-judgment interest. The decision to award or deny prejudgment interest will be upheld unless the district court has abused its discretion. EEOC v. Rath Packing Co., 787 F.2d 318, 333 (8th Cir.) (citation omitted), cert. denied, 479 U.S. 910, 107 S.Ct. 307, 93 L.Ed.2d 282 (1986); Washington v. Kroger Co., 671 F.2d 1072, 1078 (8th Cir.1982). After balancing Title VII's purpose of make whole relief against countervailing considerations, including EEOC's delay in bringing suit, Childers's unstable employment history and Delight's change in ownership, the district court concluded that back pay alone was sufficient to compensate Childers. Delight, 765 F.Supp. at 592. On these facts, we find no abuse of discretion.
 
 
 32
 We affirm the judgment and award of back pay.
 
 
 
 [1]
 The Honorable Scott O. Wright, United States Senior District Judge for the Western District of Missouri
 
 
 [2]
 In January, she had sales of $109.00; $1951.98 in February; $4116.71 in March; and $6433.67 in April
 
 
 [3]
 Childers's employment history is set out in detail in Appendix A of the district court's opinion. See EEOC v. Delight Wholesale Co., 765 F.Supp. 583, 593-94 (W.D.Mo.1991)
 
 
 [4]
 The court subsequently amended its original order and awarded Childers $59,315.28 in back pay
 
 
 [5]
 It was found that Pinkerton's employed Childers for 40 hours per week at $4.90 per hour, but that there was no evidence of regular overtime pay. Thus, the award was offset by $196.00 per week for the period between October 4, 1990 and December 1, 1990
 
 
 [6]
 Delight says that Childers failed to mitigate damages when she voluntarily quit her job at King's for personal reasons. Delight argues that this voluntary quit tolls the back pay period during Childers's subsequent period of unemployment and entitles it to a credit for what Childers could have earned at King's, rather than a credit for her actual earnings from the jobs she held after she left the grocery store. Delight also asserts that the district court erred by holding that Childers quit her position at St. Mary's Manor for business reasons. Delight contends as well that the district court should have found that Childers worked 60 hours per week at Pinkerton's, not 40 hours